### STATE *v.* SNYDER.

The indictment alleged that the respondent, on the 12th day of December, 1869, at Concord, &c., one horse of the value of one hundred dollars, one sleigh of the value of fifty dollars, and one harness of the value of thirty dollars, all of the goods and chattels of one E. T. S., then and there being found, feloniously did steal, take, and carry away, &c. *Held,* not bad for duplicity.

*Held,* also, that the horse, sleigh, and harness being taken at one time, and all being the property of one owner, constitute but one larceny, and . cannot be the subject of different indictments.

In such case the State might omit the other property, and indict and convict for stealing the horse only, under sec. 2, chap. 260, General Statutes, or it might indict and convict for the act of stealing all the property, as the goods and chattels of the owner, under sec. 3 of the same chapter.

The State, having elected to prosecute for the lower grade of the offence, cannot afterwards prosecute for the higher.

*State* v. *Nelson,* 8 N. H. 163, *overruled.*

INDICTMENT, against John Snyder, alleging that respondent, on December 12, 1869, at Concord, " with force and arms, feloniously did steal, take, and carry away one horse of the value of one hundred dollars, one sleigh of the value of fifty dollars, and one harness of the value of thirty dollars, all of the goods and chattels of one Emery T. Staniels, then and there being found, contrary to the form of the statute," &c.   Plea, not guilty.   The State, without objection, offered evidence that respondent got into the sleigh, to which the horse was harnessed, and drove away, continuing to drive until he was upset and thrown out.   The respondent offered evidence to show that he did not intend to steal the horse, sleigh, and harness ; but admitted that their value exceeded twenty dollars.   The respondent, having been con-

victed, moved an arrest of judgment, " because two distinct and sepa-
rate offences are laid in one count of the indictment." The motion
was overruled, and the respondent sentenced .to three years in the
State prison. Respondent thereupon tendered this bill of exception,
which was allowed,—the presiding justice certifying that in his opinion
the respondent was not embarrassed in his defence by the joinder of
the allegations relative to the horse with the allegations relative to the
sleigh and harness, and that every particle of evidence offered by
either side related to the taking of the horse, sleigh, and harness, and
not merely to the taking of any one or two of those articles.

*Eastman, Page & Albin,* for the defendant.

We submit that the judgment in this case should have been arrested,
and that the exceptions should prevail. And we refer the court to the
following authorities: *State* v. *Nelson,* 8 N. H. 163 ; *State* v. *Fowler,* 28
N. H. 184 ; *State* v. *Merrill,* 44 N. H. 624.

*Barnard,* Solicitor for State.

SARGENT, J. It is claimed that upon the doctrine of *State* v. *Nelson,*
8 N. H. 163, the motion in arrest of judgment in this case should
have been granted, and that the exception to the ruling of the court
was well taken. We are thus called upon to examine the principles
involved in that case as well as those involved in this, and that will
very naturally lead us to a somewhat extended examination of the
laws of this State upon the subject of larceny.

We find, immediately after the separation of New Hampshire from
Massachusetts, under the presidency of John Cutts, in 1680, there was
a code of " General Laws and Liberties of the Province of New Hamp-
shire, made by the General Assembly, in Portsmouth, the 16th of
March, 16$\frac{80}{81}$, and approved by the President and Counsel."

First were the " capital laws," containing enactments for the pun-
ishing of sixteen different offences with death. Then follow the
" criminal laws," among which enactments the 6th is as follows :
" That if any strangers or inhabitants of this province shall be legally
convicted of stealing or purloyning any horses, chattels, money, or
other goods of any kind, he shall be punished by restoring three-fold
to the partie wronged, and a fine, or corporal punishment, as the
court or three of the council shall determine." And again, in 1682,
under Edward Cranfield as lieutenant governor of the province,
there was a revision of the criminal and civil laws, in which it was
enacted, sec. 5, " That if any person in this province shall be legally
convicted of stealing or purloining horses, cattle, money, or other
goods of any kind, he shall be punished by restoring three-fold to the
party wronged, and a fine not exceeding twenty shillings, or corporal
punishment, to be inflicted as the .nature or circumstances of the case
may require." Provincial Papers of N. H., vol. 1, pp. 373, 374, 382,
386, 387, 433, 445.

In " An act for the punishment of certain crimes not capital," passed Feb. 16, 1791, in sec. 3 it was enacted that " if any person shall steal any money, personal goods, or chattels, or any record, writ, process, * * * or any paper that shall contain on it evidence of a debt, covenant, contract, or promise, or .* * the evidence of the payment or discharge of any debt, covenant, contract, or promise, the person so offending * * * being thereof convicted, shall be fined not exceeding one hundred pounds, or whipped not exceeding thirty-nine stripes, and shall be farther sentenced to pay treble the value of the goods or other articles stolen to the owner thereof, * * * and if such offender be unable to make restitution, or pay such three-fold damages, he may be enjoined or sentenced to make satisfaction by service, and the person to whom such satisfaction is to be made is hereby empowered to dispose of the said convict in service for such term of time as shall be ordered and assigned by the court or justice before whom the conviction shall be." Justices were empowered to hear and determine all offences for stealing, where the value of the property stolen did not exceed forty shillings, and to sentence such offender to pay a fine not exceeding forty shillings, or to be whipped not exceeding ten stripes ; and in case of inability to pay the three-fold damages, to make satisfaction by service.   N. H. Laws (1815) 329, 330.

But the first act I have found that made a distinction between the stealing of horses, mules, cattle, and sheep, and other personal chattels, was passed Dec. 18, 1792.   See N. H. Laws (1815) 332, which is in amendment of the act of 1791, just referred to, and which recites that " Whereas larcenies are frequent and the guilty escape with little punishment, without making recompense, notwithstanding the laws now in force ; therefore, Be it enacted," &c.   Sec. 1 provides " that whensoever any person   *   *   shall be hereafter convicted of stealing any horse or horses, mule or mules, neat cattle or sheep, every such person shall be marked with a line of India ink, well and deeply inserted above the eyebrows, from the hair of the temples on the one side to the hair of the temples on the other side of the forehead, and by a line in the same manner inserted from the centre of the line aforesaid to the end of the nose, on the most prominent part thereof, on the first conviction ; and for stealing any other personal property, shall be marked in like manner on the second conviction.   And every such person shall remain in custody not exceeding thirty days, till the said marks are well and effectually fixed ; and shall be liable to be marked again, in case by any means he shall rub out or efface the same."   It was provided that the sheriff of the county should make these marks as soon as may be after conviction, and should receive from the county the sum of six shillings for marking each convict : also, that " any person to whom one convicted of stealing is put to service to make satisfaction, may in any manner, without cruelty, chain or otherwise shackle or confine in the public jails or elsewhere such convict in service, in such manner as may be necessary for his performing from day to day the task or labor enjoined on him."

Sec. 2 provides " that where any person shall have been convicted

and marked as aforesaid  *  *  in any subsequent conviction he shall receive the additional punishment of whipping not exceeding one hundred stripes, and be set on the gallows with a rope about his neck not exceeding two hours.

This is the origin, so far as I have been able to learn, of the distinction between the larceny of horses, mules, cattle, and sheep, and other personal property or chattels; and it will be observed that it is the same offence in both cases—nothing but larceny; and the punishment is the same in all respects for horse-stealing as for stealing money or other property, except that the mark upon the forehead and the nose of the convict was to be made upon the first conviction for stealing horses, &c., but not until the second conviction for stealing other personal chattels. It makes the same offence subject to a little higher penalty or punishment in one case than in the other, but it does not change the nature or the grade of the offence. It makes no such difference as that which is now made between stealing chattels of the value of twenty dollars and upwards, and of the value of less than twenty dollars. And yet under an indictment for grand larceny the prisoner may be convicted of petit larceny, if the jury find the value of the goods to be less than twenty dollars; and though the prisoner were charged with petit larceny only, and the jury should find the value of the property stolen to be more than twenty dollars, yet the prisoner may be convicted of the petit larceny, because the greater necessarily includes the less.

By the act of June 19, 1812, secs. 25 and 26, grand larceny was made to consist in the stealing, taking, and carrying away of the property of another, any money, goods, or chattels, of the value of fifty dollars, or any bond, note, bill, or other writing containing evidence of any debt, &c., of the like amount, and the stealing of deeds, charters, wills and testaments, policies of insurance, &c.—Laws of N. H. (1815) 322—while petit larceny was made to consist of stealing similar property of less value than fifty dollars.    Laws of N. H. (1815) 323.

The punishment for grand larceny was " confinement to hard labor for a term not less than one year nor more than three years." Id. 323. This statute, besides providing for burglary, also has special provisions against larceny, committed in a dwelling-house, by entering in the night-time, without breaking, or by breaking and entering in the day-time, which were punishable by confinement to hard labor from two to ten years; and against larceny, committed by entering in the night-time any shop, warehouse, store, office, or any ship, or vessel, which was punished in the same way from one to five years; and against larceny from the person, punished from one to five years; and against the stealing of any horse or horses, mule or mules, neat cattle or sheep, punished from one to five years.    N. H. Laws (1815) 324.

By an amendment to this act passed Dec. 18, 1812, the dividing line between grand and petit larceny was fixed at twenty dollars instead of fifty, the punishment for stealing over twenty dollars' worth of property being from one to three years, as before, and sections 25 and 26 of said

act of June, 1812, were repealed, but the other provisions remained unchanged, and have remained with various modifications ever since.

In the act of January 2, 1828, N. H. Laws (1830) 136, 142, 143, the same provisions will be found reënacted, with generally an increase in the term of punishment above the various terms specified in the law of 1812. By this statute of 1828, the punishment for grand larceny is imprisonment from two to five years; of larceny in a dwelling-house, from two to ten years; larceny in a shop, vessel, &c., from one to seven years; larceny from the person, three to seven years; and larceny of horses, mules, cattle, and sheep, three to seven years.

In the Revised Statutes, ch. 215, p. 236, 237, punishment of grand larceny is by imprisonment from two to five years; of larceny from the person, from three to seven years; and for stealing any horse, mule, cattle, sheep, or swine, from three to seven years; while the two grades of the offence, the stealing from a dwelling-house, and from a shop, vessel, &c., are united and made punishable by imprisonment for a term not exceeding five years. See also Compiled Stats. 549; Genl. Statutes, ch. 260, secs. 1, 2, 3, 9, and ch. 261, sec. 4.

In 1847 another distinction was made between a petit larceny above the sum of ten dollars, and one below that sum. Stats. of 1847, ch. 502, sec. 1; Comp. Stats., p. 551; and the same is found in the Gen. Stats., ch. 260, secs. 4, 5, and 6.

The reason why the stealing of property from a dwelling-house, which was entered in the night, or broken and entered in the daytime, or a larceny from the person, was punished with a severer punishment than ordinary larceny, is apparent. The guilt of ordinary larceny was enhanced by a complication with some other crime, or by being accompanied by fraud, or force practised or used upon the person, to accomplish the stealing of the goods as the ultimate object.

The reason also that a distinction, not made at first, was early introduced in the State, between the stealing of horses, mules, cattle, and sheep, and the stealing of other goods and chattels, was, that in the times when this distinction was first made (1792) this species of property had become more valuable than many other kinds of personal property, on account of the necessity of their use; the horses, mules, and cattle, in clearing and cultivating the land, and making the improvements then so desirable, such as making roads, drawing lumber for building, &c., the sheep in furnishing material for winter clothing, and the sheep and cattle for the purposes of food. Another reason why this distinction was made was, that it was more difficult to protect this kind of property than many other kinds. It could not be kept under lock and key, or in the dwelling-house, or under the immediate observation of the owner, like some other kinds of property, but ranged in the pastures and forests, and was kept in the yards and barns, where it could not well be watched, but might be easily driven away while its owner slept, in the winter season, and more easily in the summer, when kept at a distance and beyond the sight and knowledge of the owner most of the time. As this kind of property was more valuable on account of its scarcity and the need of its use, and was also more ex-

posed to depredation than many other kinds, so it was protected by higher and severer penalties.

But in all these cases, the greater offence included the less. The State might indict and convict for the larceny only, though the proof should be that it was committed in a dwelling-house; so the prisoner might be indicted and punished for the simple larceny, though it should prove to have been a larceny from the person; so, also, the State might indict a man for the larceny of a horse, simply as the goods and chattels of the owner; or of a horse, wagon, and harness, the goods and chattels of the owner; and if they all were of the value of twenty dollars and upwards, he might be convicted under sec. 3 of chap. 260, Gen. Statutes, unless that section was repealed, so far as horses, cattle, sheep, and swine are concerned, by the enactment of the special provision in relation to those animals.

We have seen that from 1680 to 1792 there was no distinction between the larceny of horses, cattle, &c., and other chattels; but when it was provided that a higher punishment should be inflicted for stealing from the person than for stealing the same goods under other circumstances, that did not prevent a person being indicted and punished for the larceny of the goods alone, even though taken from the person, if the State only charged the larceny of the goods; and the question is, whether the same rule would apply to the stealing of horses, cattle, &c.; whether the State may waive the provision which gives a higher penalty for stealing those animals, and indict the prisoner for stealing a horse, wagon, and harness, as the ordinary goods and chattels of the owner, and if they are all proved to be of the value of twenty dollars and upwards, and the larceny is proved, have judgment against the prisoner under section 3 of chap. 260, General Statutes.

We think the State may waive the higher offences described in both sections 1 and 2 of said chapter, and convict of the lower under sec. 3.

And, first, it will be observed that section 3 does not prohibit the stealing of any *other* goods and chattels than those before specified, but the stealing of *any* goods and chattels, without regard to any other provisions, and even though they may be the same specified in the two preceding sections.

The principle involved is well stated by Bishop, 1 Bish. Cr. Law, sec. 536, as follows: "It is a general rule that a criminal person may be holden for any crime of whatever nature, which can be legally carved out of his act. He is not to elect, but the prosecutor is. If the evidence at the trial shows that he is guilty of a higher offence than he stands indicted for, or of a lower one, or of one differing in nature, whether existing under statutes or at common law, he cannot be heard to complain, the question being whether it shows him to be guilty of the one charged. Suppose, for example, the indictment was for a conspiracy to commit an offence, and the proof establishes that the conspiracy was carried into effect by the commission of it; or for manslaughter, and murder is shown; or for larceny, and it turns out that the larceny was perpetrated in the course of a burglary; or for malicious mischief, and the facts appearing would equally sustain a charge

of larceny; or for inflicting a battery on one man, when in truth the blow took effect upon two; or for the non-repair of one street, when the neglect covered several streets; or of being accessory to one person, while more persons were also guilty of the principal offence: in these and the like cases the prisoner may be convicted of what is charged against him, if, like what is not charged, it is sustained by the evidence."

So in this case, if the man is indicted for stealing at one time and place three articles, all belonging to the same man, and all attached to each other, so that a larceny of one necessarily involved a larceny of all, that would make but a single act of larceny, which could not well be divided in this case, as it might be if two different men had owned the property stolen, or if it had been taken from the same man at two or more different times, in either of which cases it might constitute two separate offences, although in the former case there was but a single act. If A discharges a gun at B, and it is so heavily loaded that the ball goes through B and enters the body of C, and kills both B and C, A might be indicted and convicted for the murder of each, as a separate offence, as much as though he had shot each one separately, although there was but a single act of A in shooting both. So in larceny, the act may be divided if the property of two persons is stolen at the same time. *State* v. *Merrill*, 44 N. H. 624.

In this case the respondent might have been indicted and convicted for stealing the horse if the other property had been omitted in the charge, under sec. 2 of ch. 260, Gen. Stats.; but there is no objection to waiving the special privilege or right which the State had to get the respondent indicted and convicted for the higher grade of the offence under that section, and proceeding under sec. 3 of the same chapter for the less offence, in which all the property could be properly specified as goods and chattels; and if the proof is that all the property taken at the same time, which belonged to the same man, was worth $20 or upwards, the offence charged is made out, and the respondent has nothing to complain of that he has been proceeded against for the lesser offence instead of the higher.

He is as well protected against any further prosecution for the same offence; for if the government convict a man for stealing a diamond pin (describing it), being the property or the goods and chattels of A B, and the convict is punished for that offence, he cannot be afterwards convicted and punished for stealing the same pin at the same time from the person of C B. 1 Bishop on Crimes, sec. 549. "If on trial for misdemeanor it appears that the transaction was carried so far as to constitute a felony, the court will, in its discretion, but not as of course, order the proceedings to be suspended until an indictment can be brought forward for the felony; yet, whether this course is consistent with the rule that no man shall be twice put in jeopardy for the same offence, is worthy of consideration. If the judge declines to give this direction, the prisoner cannot complain, because it is for his advantage to be prosecuted for the lighter matter rather than the heavier * * * So also we read in the books, that every treason includes a misprision of treason, and every felony a misprision of

felony; for which misprision, though only a misdemeanor, the party guilty of the higher crime may nevertheless be proceeded against, "if the king please."

So in *Reg.* v. *Firth*, Law Rep., vol. 1, Crown Cases reserved, 172, 176, where BOVILL, C. J., says that the prosecution of a prisoner for the lower grade of an offence instead of a higher "causes no hardship to the prisoner, but is the view that is most favorable to him, as he cannot now be again indicted for taking any" of these articles.

So that if this indictment can be sustained as valid and sufficient, under section 3 of chap. 260, Gen. Stat., notwithstanding one of the articles described and charged as being stolen was a horse, then the judgment is well enough.   We have seen that originally there was no distinction between horses, cattle, &c., and any other personal chattels; all were alike the subjects of larceny, and the same punishment was inflicted for the larceny of all.   After a time, for the reasons previously stated, and perhaps others, a slight distinction was made, as we have seen, the convict being marked in the forehead for the first offence of stealing a horse, &c., and only for the second offence for a larceny of other personal chattels; and afterwards, when the marking in the forehead, and the chaining and shackling, and the binding out to service, and the sitting upon the gallows, were done away with, a longer term of imprisonment is authorized, as the punishment for stealing horses, cattle, &c., than for stealing other personal chattels. The kind of punishment is the same—imprisonment in the State prison; but for the stealing of ordinary chattels the punishment may be less, and may not be so long as in the other case.

The question then arises, whether these provisions of the statute, which have from time to time imposed the increased penalty for stealing horses, cattle, &c., were intended to furnish an exclusive remedy in those cases, or whether these additional remedies and punishments were only intended to be cumulative, leaving the old remedies still available; or in other words, whether, after the additional penalties were prescribed for stealing horses, &c., those special remedies must be followed, and those additional punishments inflicted, or whether a person might still be indicted, and convicted, and punished under the old statute, or the common law, as the case may be.

Wharton, in his American Criminal Law, vol. 1, sec. 10, says: "Wherever a statute creates an offence and expressly provides a punishment, the statutory provisions * * must be followed strictly and expressly."   But "where a statute attaches a new penalty to that which was an offence at common law, either the remedy by statute or that at common law can be pursued; and if the statute specify a mode of proceeding different from that by indictment, then, if the matter were already an indictable offence at common law, and the statute introduced merely a different mode of prosecution and punishment, the remedy is cumulative, and the prosecutor has still the option of proceeding by indictment at common law, or by the mode pointed out by the statute."   And in sec. 11, he says: "Where a new mode of punishment or new method of procedure is directed (by statute), the

class of the offence not being altered, the remedies in general are considered cumulative, and the defendant may still be indicted at common law. *Regina* v. *Wigg,* 2 Ld. Raymond 1163 ; *Rex* v. *Balme,* 2 Cowper 648 ; *Rex* v. *Carlile,* 3 B. & Ald. 161.

In 1 Bishop's Crim. Law, sec. 91, it is said that " every legislative act, in affirmative words, is to be regarded *prima facie* as an *addition* to the mass of law, for such on its face it purports to be ; yet when it is inconsistent with the former law, it must, as the last expression of the legislative will, prevail. But repeals by implication thus explained are not favored. Therefore, statutes in derogation of the common law, or of a previous express enactment, are to be construed strictly, not operating beyond their words, or the clear repugnance of their provisions ; that is, the new displaces the old only where and so far as directly and irreconcilably opposed · in terms." And in sec. 92 he states the general rule to be that " an affirmative statute never repeals the prior law, unless there is a direct contradiction between the two." And in sec. 93 he says, " where the new statute does not repeal the previous law, both laws have a concurrent efficacy, and suitors may elect under which to proceed. * * * So it is every-day practice in the criminal courts for a prosecutor to proceed on either one of two statutes, or at the common law, as he may elect." See *United States* v. *Pirates,* 5 Wheat. 184.

Upon this point we have a case in our own State strongly in point, *State* v. *Wilson,* 43 N. H. 415, where it is held that the law does not favor repeals by implication, either of former statutes or of the common law, and that, although two acts are seemingly repugnant, yet they shall if possible have such construction that the latter may not be a repeal of the former by implication, and cites Bac. Ab. Statute, D. ; Foster's case, 11 Co. 63 ; Weston's case, Dyer 347 ; *Snell* v. *Bridgewater Co.,* 24 Pick. 298. See also numerous authorities cited in the opinion and in the solicitor's brief for State.

Our opinion is, therefore, that in this case the indictment is good under the 3d section of chap. 260, Genl. Stats. ; that it properly charges the stealing of the goods and chattels of said Staniels, to the value of more than $20. The respondent admitted the value of the articles to be more than $20, and the jury have found him guilty of stealing the same. We think the conviction good under sec. 3, though the State might have proceeded under sec. 2 for the larceny of the horse alone, if it had so elected.

We are aware that this decision is in direct conflict with *State* v. *Nelson,* 8 N. H. 163, upon certain points, and so far we intend to overrule that case. That two distinct and separate offences cannot be laid in one count in an indictment is not questioned, but that the present case, or that *State* v. *Nelson,* was a case of that kind, we do not understand. In neither of them is there but a single charge made, a single larceny of property of the value of $20 dollars and more, and of that offence the respondent was undoubtedly guilty in both cases. And although the prosecuting officer might have indicted the respondent in both cases for stealing a horse, under another section, for which the

penalty was greater, yet he might as well, if he chose, indict him for stealing goods and chattels generally, though a horse was one of the chattels described and charged as stolen.   The respondent certainly cannot complain that he is indicted and convicted of the offence to which the lowest punishment is attached rather than the other, since the prosecutor, having elected the lower grade of the offence, cannot afterwards prosecute for the higher.

*State* v. *Nelson* was decided in 1835; in 1844, *State* v. *Nutting*, 16 Vt. 261, was decided, which is in conflict with the former; but *State* v. *Nelson* is fully considered and overruled in Vermont in the late case, *State* v. *Cameron*, 40 Vt. 555, for reasons which seem satisfactory.

The motion in arrest of

<div style="text-align: right">

*Judgment is overruled.*