ATTORNEY FOR APPELLANT
Victoria Ursulskis
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 49S02-0509-PC-405

DORSEY MATHEWS,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49G01-9409-CF-119589
The Honorable Paula Lopossa, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-0406-PC-493

**June 28, 2006**

**Boehm, Justice.**

Damaging property by fire is the crime of arson under a number of separate circumstances. We hold that damaging one property by fire is only one arson, even if the fire produces multiple consequences, any one of which is sufficient to constitute arson. We also hold that an arson is elevated to an A felony by bodily injury whether or not more than one person is injured, but injuries to multiple persons do not create multiple Class A arsons. All of these holdings are derived from the structure of the statute, not from constitutional limitations.

## Facts and Procedural History

On September 16, 1994, Dorsey Mathews and his estranged wife, Peggy Mathews, had a verbal confrontation at the Knot Here Lounge after Dorsey saw Peggy dancing with another man. A few minutes later, Tracey Pickett, a patron, saw Dorsey bend down in the hallway between the lounge's bar and its kitchen, then step back, and exit through the side door. Immediately thereafter a large flame erupted from the direction of the side door. The fire engulfed the entire bar. Between 100 and 150 people escaped through the front door, but Karen McCloud, a bar employee, died from smoke inhalation and several others were injured, including a fireman who responded to the blaze. Investigators concluded that the fire had been intentionally caused by someone who poured and ignited gasoline in the hallway near the side door. The building sustained about $100,000 in damages.

Two witnesses testified to admissions by Dorsey. According to Peggy's daughter, on the evening of the fire Dorsey had told her "that he made a bomb and he was going to go blow up the bar." The day after the fire, Dorsey awoke at the home of his son, Nathan. Nathan's then fiancée and later wife, Amy Jo Mathews, observed that Dorsey's arms were singed. Dorsey told Amy Jo that the night before he had poured gasoline down a short hallway in a bar, lit it, and driven away in his truck with the lights off.

A jury found Dorsey guilty of murder, six counts of Class A felony arson, and two counts of Class B felony arson. The trial court sentenced Dorsey to sixty years for murder, forty-five years on the first count of Class A felony arson, and twenty years each on two Class B felony arson counts, all to be served consecutively. The court also imposed twenty-five years for each of the five other Class A arson counts, all to be served concurrently with the first Class A felony arson count for a total executed sentence of 145 years.

The Court of Appeals affirmed the trial court in part, and reversed and remanded in part. Mathews v. State, 824 N.E.2d 713, 734 (Ind. Ct. App. 2005). The Court of Appeals held that convictions on both counts of B felony arson were barred under common law double jeopardy rules because they were based on the same act (the fire) and the same victim (the owner of the bar). Id. at 724. The second B felony was vacated, reducing the total sentence from 145 to 125 years. Id. The Court of Appeals affirmed the six counts of Class A felony arson, holding, that

six separate arson convictions were proper because six different individuals suffered bodily injury. Id. at 729. We granted transfer, Mathews v. State, 841 N.E.2d 183 (Ind. 2005), and requested the parties to focus their arguments on the single/multiple offense issue, in light of Kelly v. State, 539 N.E.2d 25 (Ind. 1989).

## I.     One Arson or Many

Dorsey contends that he committed only one arson, despite the resulting injuries to several people. The parties discuss this issue in terms of the double jeopardy prohibitions in both the state and federal constitutions and also as a matter of statutory construction. We think only the latter is implicated.

### A. *Elements of Crimes Versus Penalty Enhancers*

This Court has affirmed multiple convictions based on the same act where multiple victims were involved. See, e.g., Metzler v. State, 540 N.E.2d 606, 607 (Ind. 1989) (defendant who drove his truck through the front of a pub injuring eighteen people and killing another was convicted of murder and attempted murder). This is an application of the common view, classically stated in State v. Snyder, 50 N.H. 150, 156 (1870) that "If A discharges a gun at B, and it is so heavily loaded that the ball goes through B and enters the body of C, and kills both B and C, A might be indicted and convicted for the murder of each, as a separate offence, as much as though he had shot each one separately, although there was but a single act of A in shooting both." See also George C. Thomas, III, Double Jeopardy: The History, The Law 163-64 (1998). In this example, the same section of the law (the murder prohibition) is violated by the same act of the defendant (shoots the gun) but a separate element is supplied by the consequence (the death of B and the death of C). Cf. Furnace v. State, 153 Ind. 93, 94, 54 N.E. 441, 441 (1899) ("the stealing of several articles of property at one and the same time, as a part of the same transaction, can constitute but one offense against the State, notwithstanding the fact that such articles belonged to several owners"); Annotation, Single or Separate Larceny Predicated Upon Stealing Property From Different Owners at the Same Time, 37 A.L.R. 3d § 3 at 1410 (1971); but see 3 Wharton's Criminal Law § 347 (15th ed. 1995) (some courts have found multiple larcenies committed when several articles of property are stolen by the defendant from different owners at the same time and at the same place).

3

Some crimes are defined such that the consequence is not an element of the crime, but can enhance the penalty. The consequence is of course a fact necessary to conviction of the elevated crime, and therefore must be found by a jury under Apprendi v. New Jersey, 530 U.S. 466, 476 (2000). In that sense the enhancing "factor" is an "element" of the elevated crime, but if the consequence serves primarily to enhance the penalty for a crime that is committed without the consequence, multiple consequences do not establish multiple crimes. This principle was established in Kelly v. State, 539 N.E.2d 25, 26 (Ind. 1989), where a single automobile accident resulted in the death of one person and serious injuries to another. The trial court sentenced Kelly to consecutive sentences for his convictions on two counts: operating a vehicle while intoxicated (OWI) resulting in death, and OWI causing serious bodily injury. Section 2 of the statute that defined OWI provided: "A person who operates a vehicle while intoxicated commits a class A misdemeanor." Indiana Code § 9-11-2-2 (Burns 1987). Two subsequent sections provided that a violation of section 2 was "a class D felony if the crime results in serious bodily injury to another person," I.C. § 9-11-2-4 (Burns 1987), and "a class C felony if the crime results in the death of another person." I.C. § 9-11-2-5 (Burns 1987).

We expressly approved the opinion of the Court of Appeals appearing as Kelly v. State, 527 N.E.2d 1148 (Ind. Ct. App. 1988), and held that an OWI resulting in injuries to more than one person nevertheless constituted only one crime. Kelly, 539 N.E.2d at 26. Under the OWI statute the multiple bodily injuries "do not increase the number of crimes, only the severity of the penalty." Id. The Court of Appeals opinion in Kelly pointed out that in crimes "such as murder, manslaughter, battery and reckless homicide, the gravamen of the offense is causing the death or injury of another person, i.e., the result is part of the definition of the crime." 527 N.E.2d at 1155. Otherwise stated, in those crimes the resulting death, injury or touching is an element of the crime. The crime is complete if the required actus reus and mental state are present. Thus, as the Court of Appeals explained in Kelly, if a murder or battery results in multiple deaths or injuries to more than one person, multiple crimes have been committed and the injury to each victim constitutes a separate offense. Id. However, OWI requires no specific consequence of the operator's action. Rather, OWI is a completed crime when the intoxicated person operates the vehicle, even if no harm results, and "the legislature chose to use the result of serious bodily injury or death as a factor enhancing the punishment for the crime rather than as an aspect of the crime

4

itself." Id.  As a result, Kelly could be convicted of only a single OWI despite the resulting multiple victims.  Id.

B. *Indiana's Arson Statute*

Dorsey argues that the structure of Indiana's arson statute is the same as the OWI statute addressed in Kelly.  Specifically, he argues that the actus reus of the crime of arson is damaging of property, and the results of that action (pecuniary loss, death, or bodily injury) are factors to enhance the punishment for the arson, but do not create separate crimes for which a sentence can be imposed and consecutively enforced.

We agree that the arson statute has some of the same structure as the OWI statute, but it is not entirely of the same character.  Indiana Code section 35-43-1-1 (2004) provides:[1]

> (a) A person who, by means of fire, explosive, or destructive device, knowingly or intentionally damages:
> (1) a dwelling of another person without the other person's consent;
> (2) property of any person under circumstances that endanger human life;
> (3) property of another person without the other person's consent if the pecuniary loss is at least five thousand dollars ($5,000); or
> (4) a structure used for religious worship without the consent of the owner of the structure;
> commits arson, a Class B felony.  However, the offense is a Class A felony if it results in either bodily injury or serious bodily injury to any person other than a defendant.
> (b) A person who commits arson for hire commits a Class B felony.  However, the offense is a Class A felony if it results in bodily injury to any other person.
> (c) A person who, by means of fire, explosive, or destructive device, knowingly or intentionally damages property of any person with intent to defraud commits arson, a Class C felony.
> (d) A person who, by means of fire, explosive, or destructive device, knowingly or intentionally damages property of another person without the other person's consent so that the resulting pecuniary loss is at least two hundred fifty dollars ($250) but less than five thousand dollars ($5,000) commits arson, a Class D felony.

_____

[1] For purposes of this opinion, the current statute is the same as the statute in effect at the time of Dorsey's 1993 crime.  It was amended after 1993 in two respects that are not relevant here.  In 1999, the legislature added subsection (a)(4) dealing with structures used for worship.  P.L. 88-1999, Sec. 1.  In 2002, the legislature amended sections 1(a), 1(c) and 1(d) by adding "or destructive device" to "by means of fire or explosive."  P.L. 123-2002, Sec. 36.

This statute, first enacted in 1977, has a rather complex structure. When it is parsed with some difficulty, it produces the following results:

> It is a crime knowingly or intentionally to damage property by fire, explosive, or destructive device if
>
> either
>
> without the owner's consent, another person's property is damaged between $250 and $5,000, a D felony, [section 1(d)],
>
> or
>
> without the owner's consent, another person's property is damaged at least $5,000, a B felony, [subsection (a)(3)], or an A felony if bodily injury results to a non-defendant, [section 1(a), last sentence]
>
> or
>
> the property is the dwelling of another person and is damaged without that person's consent (whatever its value and whoever owns it), a B felony, [subsection (a)(1)], or an A felony if bodily injury results to a non-defendant [section 1(a), last sentence],
>
> or
>
> the property is a structure used for religious worship and is damaged (in any amount) without the owner's consent, a B felony, [subsection (a)(4)], or an A felony if bodily injury results to a non-defendant [section 1(a), last sentence],
>
> or
>
> the property (whatever its value and whoever owns it) is damaged "under circumstances that endanger human life," a B felony, [subsection (a)(2)], or an A felony if bodily injury results to a non-defendant [section 1(a), last sentence],
>
> or
>
> the property (of any value and whoever owns it) is damaged with intent to defraud, a C felony, [section 1(c)],
>
> or
>
> any of the above, if done for hire, a B felony, or an A felony if it results in bodily injury to another person, [section 1(b)].

As already noted, the OWI statute in <u>Kelly</u> criminalized the operation of a vehicle while intoxicated without any resulting harm, and elevated the penalty if bodily injury resulted and further elevated it for death. Unlike the OWI statute, the arson statute does not simply create a base crime—damaging property by fire—to which elevated penalties are attached for various consequences. Rather, damaging of property is a necessary but not sufficient condition of an arson. The arson statute defines B felony arson by alternative sets of elements that include consequences (damage of at least $5,000), motivation (for hire), character of the property destroyed (dwelling, place of worship), and the risk of consequences that do not result (endangerment of human life). We therefore do not agree that arson as a B felony is governed by <u>Kelly</u>. Despite

6

this lack of entirely modular structure, however, we think the statute's A felony provisions are of the same structure as the OWI statute, and produce the same result in Dorsey's case (only one A felony) as the OWI statute did in Kelly (only one OWI). How we reach this conclusion requires some explanation.

### C. *Bodily Injury to Multiple Victims*

The enhancement to an A felony is covered by the Kelly rationale. The crime of arson as a B felony is complete under subsections (a)(1) through (a)(4) when the requisite mens rea is present and either the property of another is damaged without consent in an amount of at least $5,000, or a dwelling or place of worship is damaged without the owner's consent, or property is damaged endangering human life. Like OWI, which is the completed Class A misdemeanor if one operates a vehicle while intoxicated, irrespective of any result, but is enhanced to a D felony if serious bodily injury results or a C felony if death results, the last sentence of section 1(a) enhances the B felony, however it is accomplished, to an A felony if actual bodily injury results.

The State argues that the last sentence in section 1(a) defines separate crimes of Class A felony arson when more than one person other than the defendant incurs "bodily injury or serious bodily injury" as a result of the defendant's intentional or knowing use of fire or explosives under any of the circumstances described in section 1(a). The last sentence of section 1(a), like the enhanced penalties under the OWI statute, does not define a separate crime. The crime of Class B arson is complete upon knowingly or intentionally damaging property under at least one of the circumstances enumerated in subsections (a)(1)-(4), namely property damage in excess of $5,000 or knowingly endangering human life. Thus, an act of arson that is a B felony and also results in actual bodily injury to multiple people constitutes a single Class A felony arson. The same act may of course be charged as multiple murders or attempted murders or reckless homicides, etc., but those crimes were not charged in this case. Cf. Metzler, 540 N.E.2d at 607.

For the reasons explained in Part I.D., Dorsey committed one Class B arson by intentionally using fire to damage property under circumstances which met the criteria of both subsections (a)(2) and (a)(3). His actions also resulted in bodily injury, an element of the elevated penalty of Class A felony arson. Even though the arson caused bodily injury to multiple people, under Kel-

7

ly, Dorsey can be convicted of only one count of arson elevated to a Class A felony because of the resulting bodily injury.

### D. *One or Many Class B Felony Arsons*

We now address the problem of multiple Class B felonies. Class B felony arson can be committed by property damage of $5,000, by endangering human life, or by damaging a dwelling or place of worship. There is no base crime of knowingly or intentionally destroying property by fire and more than one of the alternatives in section 1(a) can apply to the same act of destruction of a single property by fire. It can be arson if the property is owned by another and worth $250, or owned by anyone if the fire endangers human life, or damages a dwelling or place of worship. For the reasons explained below, we conclude that damage to a single property is only one arson, even if it fits under more than one subsection of section 1(a), or endangers more than one life.

### 1. *Arson Endangering Human Life*

The State first points to subsection (a)(2), which defines arson as a Class B felony if it involves "circumstances which endanger human life." The State argues that this language makes the resulting endangerment an element of the crime, and thus, each endangered human life constitutes a separate crime. We agree that endangerment is an element of the crime, but endangerment of multiple persons without more, entails no additional consequences beyond endangerment of a single person. The legislature chose to use the phrase "endanger human life" and not "endanger a person." "Human life" is "endangered" whether a single person or a group of people are endangered. In view of the well established principle that criminal statutes are to be construed strictly, we think that simply as a matter of syntax subsection (a)(2) makes endangerment of one life or many lives only one arson.

Existing authority holds that one who destroys multiple properties with different owners is guilty of multiple counts of arson. See Williamson v. State, 798 N.E.2d 450, 451 (Ind. Ct. App. 2003), trans. denied. Based on this authority, the State argues that the legislature did not intend for a defendant who destroys properties with different owners to be guilty of multiple counts of arson, while the defendant who destroys a single property but injures multiple people

8

commits only one arson. This argument relates to two different claims: that endangering two people is two Class B crimes under subsection (a)(2) and also to the issue discussed in Part I.C.—whether injuring two people creates two Class A felonies under the last sentence of section 1(a). There is some appeal to the State's point, but the statute does not support it. The arson statute criminalizes damaging "property" (or a dwelling or a religious structure), not injuries to people. As a result, a single set of facts that satisfies more than one of the circumstances enumerated in section 1(a) (Dorsey burns the building causing $100,000 in property damage and also endangering human life) supports only one B felony as a violation of section 1(a) because only one property is damaged.

2. *Arson Under More than One Subsection of Section 1(a)*

Dorsey was convicted of one count of Class B felony arson for knowingly setting fire to the Knot Here Lounge under circumstances that endangered human life, Indiana Code section 35-43-1-1(a)(2), and a separate count of Class B felony arson for knowingly setting fire to the lounge without the consent of its owner resulting in a pecuniary loss of at least $5,000, Indiana Code section 35-43-1-1(a)(3). Specifically, the two B felonies are based on damaging the bar valued at $100,000 and damaging the same bar under circumstances that endangered human life. Each of these has an element (endangering human life and pecuniary loss) not required by the other.

The State concedes that the trial court erred in sentencing Dorsey to two consecutive twenty year terms for the two Class B felony arson convictions because under Indiana Code section 35-50-1-2, Dorsey's sentence for the two Class B felony arson convictions could be no more than the presumptive sentence for the next highest felony, which was thirty years for Class A felony arson. Thus, the State asks this Court to remand to the trial court to sentence Dorsey to 135 years imprisonment instead of 145 years executed. Dorsey responds that the two B felonies cannot stand and the Court of Appeals agreed, holding that Dorsey could not be convicted of two counts of Class B felony arson because the victim of the damage to property (the owner of the bar) was the same in both counts.

The statute starts in section 1(a) by defining "arson" as a B felony if any one of four circumstances is found. We think as a matter of statutory construction this produces only one B

9

felony "arson" whether one or more of the four alternatives in section 1(a) is established. Although damaging property is not sufficient to constitute arson, every form of arson requires it, and only damaging property is common to all. In that respect, damaging property is the central element of arson. The Court of Appeals in Montgomery v. State, 804 N.E.2d 1217, 1224-25 (Ind. Ct. App. 2004), trans. denied, focused on the number of victims of an arson as determinative of whether one or more than one Class B crime has been committed. Following this rationale, the Court of Appeals in this case held that Dorsey could be convicted of only one Class B arson because the victim of each of the two Class B felonies was the owner of the lounge. Mathews, 824 N.E.2d at 724. We agree with the result reached by the Court of Appeals. However, the reason Dorsey committed only one Class B arson is that the number of arsons turns on the number of properties damaged under one or more of the qualifying circumstances (property damage of at least $5,000, endangering human life, dwelling, etc.). The structure of the arson statute dictates that damaging property owned by only one owner by the same use of fire, explosive, or destructive device is only one B felony arson, whether it falls under one or more than one of the alternatives in section 1(a). We reach this conclusion based on the structure of the B felony arson defined by section 1(a). It does not define different B felony crimes that might be called "arson endangering life" or "arson causing pecuniary loss" or "arson of a dwelling." Although the statutory language could be clearer, it defines Class B felony arson as knowingly or intentionally damaging one person's property by fire with any one of the alternative criteria in subsections (a)(1)-(4). But, so long as only one person's property is damaged by fire, there is only one Class B arson even if more than one of the circumstances set forth in subsection (a)(1)-(4) are found.

3. *Damaging Property of Multiple Owners*

A fire damaging properties owned by multiple persons can however produce multiple crimes. Thus, one who sets fire to a shop in a mall which spreads and destroys five other businesses in the mall commits five arsons. Williamson, 798 N.E.2d at 451. Because the arson statute defines the crime in terms of damage to property, not injury to people, the result in Williamson is correct. The person who knowingly or intentionally damages multiple properties, each in an amount in excess of $5,000, in a manner that is forbidden by the arson statute has committed multiple crimes. One who, with the requisite mens rea, shoots two people with the same shot

10

commits two murders. This result is consistent with the holdings in other jurisdictions. See, e.g., State v. Orr, 500 N.E.2d 665, 678 (Ill. App. Ct. 1986) (multiple arson convictions and sentences were appropriate for single act of setting fire to one residence which spread and damaged neighboring residences); People v. Barber, 659 N.W.2d 674, 679 (Mich. Ct. App. 2003); State v. Jackson, 2003 Mich. App. LEXIS 2522, at *8 (Oct. 7, 2003) (defendant properly convicted of forty-one counts of arson based on a single fire that destroyed forty-one apartment units); State v. Brown, 1986 Ohio App. LEXIS 5885, at *5-6 (Mar. 12, 1986) (defendant guilty of three arsons when she set fire to a bowling alley and the fire spread and ignited two adjacent buildings). Here, the enhancing factor is not damaging multiple properties, but damage to one property which also endangered human life.

## II.     Jury Instructions on Murder

Dorsey argues that the trial court erred when it instructed the jury on the murder charge. Dorsey does not dispute the State's assertion that his trial counsel neither objected to the murder instruction nor tendered his own instruction. To avoid procedural default, Dorsey argues that because the murder instruction failed to include the elements of arson, the court committed "fundamental error." The "fundamental error" exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. Boesch v. State, 778 N.E.2d 1276, 1279 (Ind. 2002). "The crimes of [knowing or intentional] murder and felony murder each contain elements different from the other but are equal in rank." Schiro v. State, 533 N.E.2d 1201, 1208 (Ind. 1989). For example, to convict a defendant of knowing or intentional murder, the State must prove beyond a reasonable doubt a "knowing or intentional" killing, but to convict a defendant of felony murder, the State must prove that a killing (which may have been accidental) occurred while the defendant committed or attempted to commit one of several felonies. Thomas v. State, 827 N.E.2d 1131, 1133 (Ind. 2005).

Dorsey argues that it is not clear whether the State charged him with knowing murder or felony murder and contends the court's murder instruction did not cure this conflation of the two. The State charged Dorsey with the murder of Karen McCloud, citing Indiana Code section 35-42-1-1 generally. That section reads:

11

A person who:
(1) knowingly or intentionally kills another human being;
(2) kills another human being while committing or attempting to commit arson,
    burglary, child molesting, consumer product tampering, criminal deviate con-
    duct, kidnapping, rape, robbery, or carjacking;

* * *

commits murder, a felony.

Count I of the State's charging instrument read "Dorsey L. Mathews, on or about September 16, 1994, did knowingly kill another human being, namely: Karen McCloud, while committing the crime of Arson, thereby inflicting mortal injuries upon Karen McCloud, causing Karen McCloud to die." We agree that this charging instrument suggested that the State would attempt to prove Dorsey guilty of both knowing murder and felony murder. This imprecision carried through to the preliminary and final instructions, both of which read:

> The crime of murder is defined by statute as follows:
>     A person who knowingly or intentionally kills another human being, or kills another human being while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape or robbery, commits murder, a felony.
>     To convict the defendant, Dorsay [sic] L. Mathews, of the crime of murder, a felony, as charged in Count I of the Information, the State must prove each of the following elements:
>     The defendant on or about the September 16, 1994
>     1. knowingly
>     2. killed
>     3. Karen McCloud while committing the crime of arson, thereby inflicting mortal injuries upon Karen McCloud, causing Karen McCloud to die.

The State must prove each of these elements beyond a reasonable doubt.[2]

The State concedes that, "[a]t trial, the deputy prosecutor appeared to be confused as to whether the information charged murder or felony-murder. The deputy prosecutor, however, tendered a final jury instruction, that the trial court refused to give, that charged both murder and felony-murder." The jury returned a general verdict which stated: "We, the jury, find the defen-

---

[2] Instruction number 29 echoed number 8 verbatim except the final sentence read:
> If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant, Dorsey L. Mathews, guilty of murder, a felony, as charged in Count I of the Information.
> If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant, Dorsey L. Mathews, not guilty of murder, a felony, as charged in Count I of the Information.

dant Dorsey L. Mathews guilty of the crime of murder as charged in Count I of the information." Neither the verdict nor the trial court's judgment or sentencing order distinguished between knowing murder and felony murder.

The State argues that if the murder count is read as a charge for knowing murder, then the arson reference in the charge is "merely the mechanism for the homicide," and thus superfluous. However, if the charge is deemed to be felony murder, then the murder instruction should be read together with the other instructions, which correctly set forth the elements of arson. Dorsey argues that the arson instruction does not save the flawed murder instruction and the trial court committed a fundamental error. We agree that the instruction was erroneous, but the error was in Dorsey's favor, by addressing unnecessary elements to the crime of murder. As such it is harmless error, not fundamental error.

This Court recently dealt with a very similar situation. In Thomas the instruction set out the elements of knowing or intentional murder, but also made reference to felony murder and did not set forth the elements of the underlying felony. 827 N.E.2d at 1133. We held that "in light of the jury's unanimous verdict," because "both the charging information and jury instructions contain each of the elements of Knowing or Intentional Murder" the State met its burden of proof on the charge of "Knowing or Intentional Murder." Id. at 1133-34. The same is true here, with even more precision because of the instructions as to arson.

In short, the jury was instructed to find Dorsey guilty of murder only if the State proved beyond a reasonable doubt that he "knowingly killed Karen McCloud while committing arson." The jury returned a verdict of guilty, and given its instructions found him guilty of all elements of both knowing murder and felony murder. Dorsey was not prejudiced by the erroneous mixture of the two, and the error certainly did not rise to the level of fundamental error.

### III. Consecutive and Enhanced Sentencing

As a result of our holdings in Part I, the two convictions for B felony arson and five of the six convictions for A felony arson are vacated, leaving Dorsey's sentence at 105 years as imposed by the trial court for consecutive terms of sixty years (murder) and forty-five years (Class A felony arson). Dorsey challenges his executed sentence, contending that the trial court erred

when ordering the sentences to be run consecutively and abused its discretion in enhancing his sentences. The sentence was imposed in 1994, long before Blakely v. Washington, 542 U.S. 296 (2004) and Smylie v. State, 823 N.E.2d 679 (Ind. 2005) and is not subject to those cases. The imposition of consecutive sentences is a separate and discrete decision from sentence enhancement, although both may be dependent upon the same aggravating circumstances. Ajabu v. State, 722 N.E.2d 339, 343 (Ind. 2000). As with sentence enhancement, even a single aggravating circumstance may support the imposition of consecutive sentences. Sanquenetti v. State, 727 N.E.2d 437, 442 (Ind. 2000).

In its sentencing statement, the trial court acknowledged that there was one mitigating factor, a generally "law abiding life," but found it outweighed by three aggravating circumstances. As aggravating circumstance, the trial court found: "That the nature of the crimes are such that less than an enhanced sentence would depreciate the seriousness of the offense. The Court believes that Arson is akin to domestic terrorism. That Arson can result in the deaths of more innocent victims than almost any other crime besides terrorism." The court next found that Dorsey was "in need of corrective treatment that can only be found at a prison setting" noting Dorsey's aid in an escape attempt from the jail. Last, the court found that Dorsey was "unrepentant about the criminal acts" for which he was found guilty.

Dorsey argues that the trial court relied on improper aggravating circumstances to enhance his sentences and to order them to be run consecutively. Dorsey first argues that this Court has consistently held that the "depreciate the seriousness of the offense" be used as an aggravating factor only when the court is considering the imposition of a shorter sentence than the presumptive. This is not an accurate statement. To the contrary, we have held that it is not error to enhance a sentence based upon the aggravating circumstance that a sentence less than the enhanced term would depreciate the seriousness of the crime committed. See Walter v. State, 727 N.E.2d 443, 447 (Ind. 2000); Huffman v. State, 717 N.E.2d 571, 577 (Ind. 1999); Ector v. State, 639 N.E.2d 1014, 1016 (Ind. 1994); Evans v. State, 497 N.E.2d 919, 923-24 (Ind. 1986). However, depreciation of the seriousness of the crime should not be relied upon as a factor to order sentences to be served consecutively. See Sherwood v. State, 702 N.E.2d 694, 700 (Ind. 1998); Blanche v. State, 690 N.E.2d 709, 715 (Ind. 1998). Therefore, the trial court did not err when it relied on its conclusion "that less than an enhanced sentence would depreciate the seriousness of

14

the offense" as an aggravating circumstance for sentence enhancement. The other two aggravating factors support the trial court's decision to order the sentences to be served consecutively.

Dorsey next argues that the court did not explain why he required correctional or rehabilitative treatment at a penal facility beyond the presumptive sentence. See Bailey v. State, 763 N.E.2d 998, 1004 (Ind. 2002) (court "needs to explain why the defendant requires treatment beyond the presumptive sentence"). We think the trial court's references to Dorsey's involvement in an escape attempt from jail were sufficient support for this finding.

Dorsey also contends that "it is improper . . . to rely on a defendant's maintaining his innocence as an aggravator." See Angleton v. State, 686 N.E.2d 803, 816 (Ind. 1997). This is a correct proposition of law, but it is inapplicable here. Angleton noted that a defendant's "lack of remorse" can serve as an aggravator. Id. at 816 n.11; see also Veal v. State, 784 N.E.2d 490, 494 (Ind. 2003). Here, the trial court found that Dorsey was "unrepentant about the criminal acts," not that he maintained innocence.

Finally, Dorsey argues that sentences of this length should be reserved for the worst offenders. The trial court equated Dorsey's criminal act to domestic terrorism and cited the many lives that could have been lost as a result of his arson. We do not believe the trial court's decision to enhance Dorsey's knowing murder and Class A felony arson sentences was inappropriate.[3]

## Conclusion

The trial court's consecutive sentences for knowing murder and Class A felony arson are affirmed. The Class A felony arsons and Class B convictions on Counts III through IX are vacated. This case is remanded with instruction to enter a sentence of 105 years imprisonment.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.

---

[3] This appellate authority is implemented through Appellate Rule 7(B), which before 2002 called for revision of a sentence only if it was "manifestly unreasonable." The rule now provides that this "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."