**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MATTHEW D. ANGLEMEYER**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MARJORIE LAWYER-SMITH**
Deputy Attorney General
Indianapolis, Indiana



FILED

Jul 17 2012, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KENNETH SIMMONS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1108-CR-781 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol Orbison, Judge
Cause No. 49G22-1009-FB-71603

**July 17, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Kenneth Simmons ("Simmons") was convicted in Marion Superior Court of Class B felony aggravated battery. Simmons appeals and presents four issues, which we consolidate and restate as the following two: (1) whether fundamental error occurred when the trial court admitted evidence indicating that Simmons was asleep in the police interrogation room, and (2) whether fundamental error occurred when the trial court admitted evidence indicating that a police detective interviewed the victim at a nursing home.

We affirm.

### Facts and Procedural History

In the summer of 2011, Simmons had an on-again, off-again, romantic relationship with the victim in this case, Robin Murry ("Robin"). Robin moved into Simmons's home in Indianapolis and stayed there for five to seven days, where the couple used drugs on occasion. On July 31, 2010, Simmons kicked Robin out of his home. In an ensuing altercation, Robin cut Simmons's finger with a knife. After this incident, Simmons saw Robin only once in a period of a month and a half.

In the early morning hours of September 14, 2010, Simmons's neighbor Linda Saunders ("Saunders") heard the sound of a woman screaming. Saunders and her son went out their front door and saw another neighbor repeatedly screaming, "He killed her." Tr. p. 192. They also saw Robin lying on the ground. They brought the distraught neighbor to their porch to calm her down and saw Simmons "peeking" out the front door. Id. at 193. Simmons came over and admitted that he had stabbed Robin. Id. at 193, 203. According to Saunders, Simmons stated, "I stabbed the bitch before she could stab me."

Tr. p. 193. But according to her son, Simmons stated, "I cut the bitch," referring to Robin, because she had refused to leave his house. Id. at 203. When the police arrived, they found Robin in a neighboring yard, lying in a pool of her own blood. Simmons admitted that he had followed Robin out of his home and stabbed her in the arm and leg. However, Simmons claimed that he did so only after Robin attempted to stab him.[1]

The knife punctured the brachial artery in Robin's arm and the femoral artery in her leg. By the time she was taken to the emergency room, she had lost approximately half of her blood. She had also stopped breathing and her pupils were fixed. Her condition was so serious that she was considered as a possible organ donor. Robin ultimately survived, but had no memory of the stabbing.

On September 16, 2010, the State charged Simmons with Class B felony aggravated battery. A jury trial was held on July 18, 2011, at which Simmons claimed self-defense. The State's theory of the case was that Robin had been in the home with Simmons's permission,[2] that the two got into an argument, and that Simmons stabbed Robin when she tried to leave. Simmons, however, claimed that he acted in self-defense after Robin threatened to stab him with scissors and a knife. The jury rejected this defense and found Simmons guilty as charged. The trial court sentenced Simmons on

---

[1] According to Simmons, he had awoken to find Robin inside his home, smoking crack cocaine; Robin put scissors to his neck and accused him of having an arrest warrant issued for her; Simmons told Robin to leave, but she refused; and Simmons claimed that Robin had his cell phone and that she fled out the front door when he attempted to take it back.

[2] There was no damage to the home indicating forced entry by Robin, and Robin had with her many personal belongings in an overnight bag.

3

August 15, 2011 to twelve years, with eight years executed and four years suspended. Simmons now appeals.

**Standard of Review**

Both of the issues Simmons presents involve the admission of evidence. The admission of evidence is within the sound discretion of the trial court, and we review the court's decision only for an abuse of that discretion. Boatner v. State, 934 N.E.2d 184, 186 (Ind. Ct. App. 2010). The trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. Id.

**I. Sleeping in the Interrogation Room**

Simmons first argues that the trial court should have excluded evidence that he was sleeping in the interrogation room when Detective Kevin Duley ("Detective Duley") came into the room to administer a buccal swab to obtain Simmons's DNA. Ex. Vol., p. 161, State's Ex. 85 at 14:26 to 15:02.[3] Simmons now claims that this constituted an improper comment on his post-Miranda silence and was irrelevant and unduly prejudicial.

A. *Post-Miranda Silence*

In Doyle v. Ohio, 426 U.S. 610, 619 (1976), the United States Supreme Court held that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth

---

[3] A video recording of Detective Duley's deposition testimony was played to the jury at trial, but it does not appear that a transcript of this testimony was admitted into trial. Nor was it included in the transcript of the trial. Our citation therefore refers to the time on the video recording where the cited testimony occurs.

4

Amendment." The Court explained, "while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings." Id. at 618. In this context, "'[s]ilence' does not mean only muteness; it includes the statement of a desire to remain silent as well as a desire to remain silent until an attorney has been consulted." Kubsch v. State, 784 N.E.2d 905, 913-14 (Ind. 2003). The Doyle rule is not limited solely to "the use for impeachment purposes" of a defendant's silence, as it has been held to apply to the use of a defendant's silence as affirmative proof in the State's case-in-chief. Kubsch, 784 N.E.2d at 913-14.

In addressing this claim, we first note that Simmons failed to object to the admission of the video recording of Detective Duley's deposition testimony on grounds that it constituted an impermissible comment on his post-Miranda silence. The issue is therefore waived. "Failure to object at trial to the admission of evidence results in waiver of that issue on appeal." Kubsch, 784 N.E.2d at 923.

Simmons seeks to avoid waiver by framing his claim in terms of fundamental error. A claim that has been waived by a defendant's failure to object at trial may be reviewed on appeal to determine whether fundamental error occurred, but the fundamental error exception to the contemporaneous objection requirement is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010) (quoting Mathews v. State, 849 N.E.2d 578, 587 (Ind. 2006)). To be considered fundamental, the

5

claimed error must make a fair trial impossible. Id. (citing Clark v. State, 915 N.E.2d 126, 131 (Ind. 2009)). Thus, this exception is available only in "egregious circumstances," such as where a defendant was convicted despite the lack of proof on an element of the crime. See id. (citing Smith v. State, 459 N.E.2d 355, 357 (Ind. 1984)). This is a strict standard that Simmons fails to meet.

In the video recording of Detective Duley's deposition that was admitted at trial, the State asked what Simmons's demeanor was like when Detective Duley went into the interrogation room. Detective Duley responded that Simmons was asleep and was calm after he woke up and did not appear to be nervous. The detective then explained the procedure used to take a buccal swab sample for DNA testing. There was no testimony regarding whether Simmons spoke to Detective Duley or whether he cooperated with the police. The State did not present any further evidence regarding Simmons being asleep, nor did the prosecuting attorney mention it during the State's closing argument. There is no indication that the State used the evidence of Simmons being asleep in an attempt to show that Simmons exercised his right to remain silent. Detective Duley's testimony did not tell the jury that Simmons refused to answer any questions or that he chose to remain silent; it simply informed the jury that Simmons was asleep when the detective entered the room.

Under these facts and circumstances, we conclude that no Doyle error, much less fundamental error, occurred in the admission of this evidence regarding Simmons's demeanor in the interrogation room. See State v. Lockhart, 4 A.3d 1176, 1204-05 (Conn. 2010) (holding that testimony simply describing defendant's "arrogant" demeanor during

interview was not a <u>Doyle</u> violation); <u>People v. Graziosa</u>, 756 N.Y.S.2d 825, 828 (N.Y. Crim. Ct. 2003) (rejecting defendant's "novel argument" that any evidence or comment on the defendant's post-arrest behavior was communicative and therefore an inadmissible comment upon post-arrest, post-Miranda silence); <u>United States v. Velarde-Gomez</u>, 269 F.3d 1023, 1031-33 (9th Cir. 2001) (recognizing that evidence regarding defendant's demeanor, such as slurred speech or apparent nervousness, is not subject to Fifth Amendment protections); <u>Zuern v. Tate</u>, 101 F. Supp. 2d 948, 980 (S.D. Ohio 2000) (concluding that testimony regarding defendant's blank expression was not a <u>Doyle</u> violation because Miranda warnings do not impliedly promise that expression or demeanor will not be used against a defendant), <u>aff'd in relevant part</u>, 336 F.3d 478 (6th Cir. 2003); <u>United States v. Elkins</u>, 774 F.2d 530, 537 (1st Cir. 1985) (concluding that testimony regarding defendant's lack of surprise when being arrested did not constitute an impermissible comment on defendant's post-Miranda silence); <u>Cf.</u> <u>Bates v. Lee</u>, 308 F.3d 411, 422 (4th Cir. 2002) (noting that comments referring to a defendant's demeanor during trial does not constitute a <u>Doyle</u> violation).

B. *Relevance and Undue Prejudice*

Simmons also claims evidence that he was sleeping in the interrogation room was irrelevant and unduly prejudicial. Indiana Evidence Rule 401 defines "relevant evidence" very broadly to mean: "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence which is not relevant is inadmissible. Ind. Evidence Rule 402. But even relevant evidence may be excluded "if its probative

value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Ind. Evidence Rule 403.

Simmons claims that the fact that he was sleeping in the interrogation room is irrelevant to the question of whether he acted in self-defense. We disagree. This evidence was somewhat relevant for purposes of showing Simmons's emotional state after the stabbing, which the jury could use to determine whether Simmons acted in self-defense. It also explained the circumstances surrounding the administration of the buccal swab that was used to obtain Simmons's DNA. In short, we can discern no fundamental error in the admission of the testimony that Simmons was asleep when Detective Duley entered the interrogation room.

## II. Evidence that the Victim was in a Nursing Home

Simmons also claims that the trial court erred in the admission of testimony indicating that Robin was in a nursing home. During Detective Duley's deposition testimony, he stated that he attempted to interview Robin "at a nursing home or rehabilitation home" a few months after the stabbing, but that Robin was unable to recall the events surrounding the incident. Ex. Vol. 161, State's Ex. 85 at 21:45 to 21:56. Again, however, Simmons failed to object to this testimony and the issue is waived. But Simmons again seeks to avoid this waiver by arguing that the admission of this evidence amounted to fundamental error.

Simmons argues that evidence that Robin was in a nursing home was irrelevant to any issue at trial and unduly prejudicial to his defense because "[a] nursing home resident

8

is unlikely to pose a genuine threat to safety." Appellant's Br. p. 13. We disagree. First, the State was required to prove that Simmons knowingly or intentionally inflicted injury on Robin that created a "substantial risk of death." See Ind. Code § 35-42-2-1.5; Appellant's App. p. 27. Evidence that Robin's interview took place in a nursing home was relevant in that it was evidence of the severity of her injuries. The fact that the State produced other evidence regarding the severity of Robin's injuries does not render irrelevant the fact that she was still in a nursing home months later. Moreover, the reference to the fact that Robin was interviewed while she resided in a nursing home or rehabilitation facility was brief, and Detective Duley gave no testimony regarding her specific medical condition in the nursing home. Nor did the State refer to this evidence in its closing argument.

We also reject Simmons's argument that describing Robin as being in a nursing home somehow "reduced the threat she posed to Simmons in the mind of the jurors." Appellant's Br. p. 13. It is clear that Robin was in the nursing home months after the stabbing as a result of the injuries she suffered during the stabbing. Her condition months after the event could not logically be used to lessen the threat she might have posed to Simmons on the night of the stabbing. We are confident that the jury could understand this straightforward distinction. We therefore conclude that the admission of a brief reference to the fact that the victim resided in a nursing home or rehabilitation facility months after the stabbing did not constitute fundamental error.

9

**Conclusion**

No fundamental error occurred when the trial court admitted evidence that Simmons was asleep in the interrogation room and that the victim was in a nursing home after Simmons stabbed her.

Affirmed.

ROBB, C.J., and BAILEY, J., concur.