## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 24 2018, 6:57 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anthony S. Churchward
Anthony S. Churchward, P.C.
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dominic F. Tripoli, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 24, 2018 <br><br> Court of Appeals Case No. 18A-CR-193 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable John F. Surbeck, Jr., Judge <br> The Honorable David M. Zent, Magistrate <br><br> Trial Court Cause No. 02D06-1702-CM-776 |

**Kirsch, Judge.**

[1] Dominic F. Tripoli ("Tripoli") appeals his conviction following a jury trial for Class A misdemeanor invasion of privacy,[1] contending that the trial court committed fundamental error when it admitted certain statements he contends were hearsay.

[2] We affirm.

## Facts and Procedural History

[3] Tripoli was in a relationship with C.B. from 2014 until mid-January 2016, when the two separated. Soon thereafter, C.B. obtained a civil protective order against Tripoli, the terms of which included that he: (1) was "prohibited from harassing, annoying, telephoning, contacting, or directly or indirectly communicating" with C.B.; and (2) was "ordered to stay away from [C.B.'s] residence." *State's Ex.* 1. On January 27, 2016, a patrol officer with the Allen County Sheriff's Department personally served that protective order on Tripoli, explained to him the terms of the protective order, and told Tripoli that he could be arrested if he violated any of those terms. *Tr. Vol. 1* at 30.

[4] On November 18, 2016, C.B. was in her Allen County home when she received a call on her cell phone from a restricted line. C.B. answered the call, but the caller refused to identify himself and, instead, asked C.B. if she would go to dinner with him at her favorite restaurant, Biaggi's. C.B. immediately

---

[1] *See* Ind. Code § 35-46-1-15.1.

recognized the caller as Tripoli. She also knew that Tripoli had her cell phone number and knew that Biaggi's was her favorite restaurant. Hoping that Tripoli would identify himself, C.B. asked the caller why she would go out for dinner when she did not know who the caller was. Becoming frustrated, C.B. told Tripoli, "I don't know how many times I have to tell you this, it is over. Stop calling me. There are no more dinners. There's nothing else between us. Furthermore, there is a restraining order." *State's Ex.* 2. Tripoli responded that he did not know why she obtained the restraining order. *Id.* C.B. told Tripoli that she did not want him near her, calling her, or emailing her. *Id.* Having recorded most of the conversation, C.B. ended the call and contacted the police.

[5] Fort Wayne Police Officer Michael Dowling ("Officer Dowling") responded to the call. C.B. told him that she had a protective order against Tripoli, that "he had been calling her on a restricted number [and] sending her emails," and that she had seen him walking in an alley at the back of her house "a couple of times." *Tr. Vol. 1* at 37, 52-53. She also told Officer Dowling that Tripoli had called her earlier that day; C.B. then played the recorded conversation for the officer. Officer Dowling advised C.B. not to answer her phone and to document each time she received a call from a restricted line, received an email from Tripoli, or saw Tripoli in the area near her residence. Officer Dowling told C.B. to call the police if Tripoli made further contact, and he gave her a "control number." *Tr. Vol. 1* at 53-54.

[6] On the evening of December 10, 2016, C.B was at home when "many, many, many" phone calls came in on her cell phone from a restricted line, seven of

which came in within a twenty-three-minute period. *Id.* at 38. C.B., who was angry, eventually answered her phone, recognized the caller as Tripoli, and began yelling at him, telling him repeatedly to stop calling her. *State's Ex.* 3. Tripoli asked C.B. if they could talk for a minute, saying that he didn't understand C.B.'s actions because she had previously said she loved him. *Id.* C.B. replied that he should understand her by now and had been telling him for eight months that she did not love him and wanted nothing to do with him. *Id.* C.B. recorded this conversation, and after she ended the call, she contacted the police.

[7] Fort Wayne Police Officer Mitchell Gearhart ("Officer Gearhart") responded to the call, and C.B. told him that she had received multiple calls from a restricted line, but said she knew the caller was Tripoli. C.B. showed Officer Gearhart her call log and played the recording of the most recent phone conversation.

[8] As soon as Officer Gearhart left the home, C.B.'s cell phone "started ringing again, repeatedly, consecutively," and the calls were "one right after another." *Tr. Vol 1* at 41. The phone rang so continuously that C.B. was unable to use her own phone to call the police; instead, she had to use a phone that a friend had left with her. C.B. called 911 and told the operator that an officer had just left her residence but that her "ex," Tripoli, was calling again. *Id.* C.B. said she thought Tripoli was watching her. *Id.* at 42. About three minutes after Officer Gearhart left C.B.'s home, dispatch advised him that C.B. was receiving additional phone calls and wanted him to return to her residence. Upon reaching C.B.'s home, Officer Gearhart noted that C.B. had five additional

missed calls from a restricted line; Officer Gearhart told C.B. that he would investigate further and again left the premises.

[9] As he left C.B.'s residence, Officer Gearhart "noticed the distinct tail lights of a Dodge vehicle" turning off C.B.'s street. *Id.* at 61. Officer Gearhart knew that Tripoli had driven a black Dodge Dart with heavily tinted windows in 2016, when C.B. and Tripoli were still dating. Thinking the car might be Tripoli's, Officer Gearhart tried to keep it in sight. Being unsuccessful, Officer Gearhart returned to C.B.'s street, where he saw a dark colored Dodge stopped at an intersection less than a block away from C.B.'s house. Officer Gearhart pulled up next to the vehicle, but was unable to see the driver because of the heavily tinted windows. He could, however, see the vehicle's license plate and relayed that information to dispatch, who reported that Tripoli was one of the registered owners of the vehicle. Officer Gearhart returned to C.B.'s residence and told her that she should contact the police at once if she heard or saw "anything" because "[Tripoli] may still be in the area." *Id.* at 64.

[10] On January 31, 2017, Tripoli was charged with Class A misdemeanor invasion of privacy. A jury trial was held on December 14, 2017, and Tripoli was found guilty as charged. During the sentencing hearing, the trial court sentenced Tripoli to 365 days, with 185 days suspended. Tripoli now appeals.

## Discussion and Decision

[11] On appeal, Tripoli contends that the statement made by dispatch to Officer Gearhart, identifying Tripoli as one of the registered owners of the Dodge, was

inadmissible hearsay. Tripoli concedes that he failed to object to the relevant portions of Officer Gearhart's testimony at trial, but argues that the admission of that out-of-court statement was fundamental error because it "prevented Tripoli from receiving a fair trial." *Appellant's Br.* at 10. Here, we do not address the issue of hearsay because even if we assume, without deciding, that dispatch's statement was inadmissible hearsay, we still find no fundamental error.

[12] A failure to object when the evidence is introduced at trial waives the issue for appeal. *Delarosa v. State*, 938 N.E.2d 690, 694 (Ind. 2010). "But a claim waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred." *Id*. "The fundamental error exception is 'extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process.'" *Id*. (quoting *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006)). "The error claimed must either 'make a fair trial impossible' or constitute 'clearly blatant violations of basic and elementary principles of due process.'" *Id*. (quoting *Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009)). "This exception is available only in 'egregious circumstances.'" *Id*. at 695 (quoting *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003)).

[13] To convict Tripoli of Class A misdemeanor invasion of privacy, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally violated a protective order. Ind. Code § 35-46-1-15.1. C.B.'s civil protective

order, in part, prohibited Tripoli from contacting her by telephone. Here, Tripoli does not contest that C.B. received unwanted phone calls in November and December of 2016; instead, he argues that without the corroborating evidence regarding Tripoli's car registration, which proved he was near C.B.'s residence, the State would have been unable to prove that it was, in fact, Tripoli who made the phone calls to C.B.

[14] Tripoli notes that C.B. was the only witness to testify that it was Tripoli's voice she heard on the November and December phone calls. He contends that, because those calls came in from a restricted line, it was impossible for C.B. to be certain that Tripoli made the calls. As such, Tripoli asserts that, without Officer Gearhart's testimony that the Dodge he found driving in C.B.'s neighborhood was registered to Tripoli, he would not have been convicted of Class A misdemeanor invasion of privacy. We disagree.

[15] The record before us contains sufficient independent evidence that Tripoli was guilty of violating the civil protective order. The jury heard evidence that C.B. and Tripoli were in a relationship for about two years, and when that relationship ended, C.B. obtained a protective order against Tripoli to prohibit him from calling or otherwise being in contact with her. *Tr. Vol.* 1 at 33. Upon answering her cell phone on two separate occasions, November 18, 2016, and December 10, 2016, C.B. immediately and unequivocally identified Tripoli as the individual who was calling her. *Id*. at 34, 37-38, 49. The jury heard evidence that: (1) C.B. was familiar with Tripoli's voice from her long-term relationship with him; and (2) Tripoli had C.B.'s cell phone number and knew

that her favorite restaurant was Biaggi's. *Id*. at 34, 35. Furthermore, the jury heard the content of the two recorded cell phone conversations, which reflected that the caller had been in a loving relationship with C.B. and knew about a protective order that she had obtained. *State's Ex.* 2, 3.

[16] Officer Gearhart testified that a vehicle matching the description of Tripoli's vehicle was seen less than a block away from C.B.'s house. *Tr. Vol. 1* at 62-63. C.B. testified that she believed Tripoli was nearby and watching her, which seemed probable from the evidence that C.B.'s incessant calls resumed as soon as Officer Gearhart left C.B.'s home. *Id*. at 41, 46-47. Therefore, the information from dispatch—that Tripoli was one of the registered owners of the Dodge located near C.B.'s home—had little if any probable impact on the jury. Accordingly, any error was harmless. *See Hunter v. State*, 72 N.E.3d 928, 932 (Ind. Ct. App. 2017) ("The improper admission of evidence is harmless error when the erroneously admitted evidence is merely cumulative of other evidence before the trier of fact."), *trans. denied*.

[17] Affirmed.

[18] Baker, J., and Bradford, J., concur.