## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 27 2019, 5:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John D. Owensby, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | June 27, 2019 <br><br> Court of Appeals Case No. <br> 18A-CR-2418 <br><br> Appeal from the Elkhart Circuit Court <br><br> The Honorable Michael A. Christofeno, Judge <br><br> Trial Court Cause No. <br> 20C01-1711-F2-41 |

**Baker, Judge.**

[1] John Owensby appeals his convictions and sentence for Level 2 Felony Dealing in Methamphetamine[1] and Level 5 Felony Carrying a Handgun Without a License with a Prior Felony Conviction.[2]  He argues that the evidence was insufficient, that the trial court committed fundamental error by failing to give the jury a certain instruction, and that his sentence is inappropriate in light of the nature of the offenses and his character.  Finding the evidence sufficient and no error, and that his sentence is not inappropriate, we affirm.

## Facts

[2] Elkhart County's Intelligence and Covert Enforcement Unit (the ICE Unit) is comprised of ten to twelve law enforcement officers from several local law enforcement agencies.  The ICE Unit officers work undercover to investigate higher level drug trafficking in the county.  In November 2017, Owensby was a person of interest based on an ICE Unit investigation.  The officers were familiar with Owensby's appearance and knew that he drove a Lexus.

[3] On November 8, 2017, at approximately eight or nine p.m., approximately ten ICE Unit officers arrived at a trailer in Mishawaka for a surveillance operation. They had information that Owensby would be there.  While there, the officers observed five or six cars arrive; in each case, a person exited the vehicle, entered the trailer, and then left the area shortly thereafter.  Around 10:30 p.m., a Lexus

---

[1] Ind. Code § 35-48-4-1.1(a)(2)(A), (e)(1).

[2] Ind. Code § 35-47-2-1(a).

arrived, and ICE Unit undercover officer 382 (Officer 382) notified the other officers by radio. A person later identified as Owensby entered the trailer, stayed for a minute or two, and then left. The ICE Unit officers believed that they had witnessed a drug transaction. Several ICE Unit officers followed the Lexus to conduct a traffic stop. ICE Unit undercover officer 256 (Officer 256) was assigned to follow the Lexus; ICE Unit undercover officer 353 (Officer 353), who was in uniform and in a marked vehicle, was assigned to conduct the traffic stop. ICE Unit undercover officer 152 (Officer 152) also followed the Lexus.

[4] While following the Lexus, Officer 256 saw the vehicle's left tires cross the center lane into the southbound lane while it was traveling northbound. Officer 353 stopped the Lexus on County Road 6, approached the driver's side of the vehicle, and asked Owensby and his passenger, later identified as Angela Markham, for identification. Both Owensby and Markham appeared nervous to Officer 353 and kept checking the rearview mirrors. The officer collected their information and returned to his police vehicle, where he checked each of their license statuses and checked for warrants. The passenger identified herself by a false name; she was discovered to be Markham, who had warrants out for her arrest.

[5] Before Officer 353 had stopped Owensby's vehicle, Owensby had given Markham the methamphetamine he had just obtained, telling her to "[t]ake it and run." Tr. Vol. II p. 232. He also gave her a gun. During the stop, while Officer 353 was checking the information, Markham exited the vehicle and fled

on foot. Officer 353 chose to remain with Owensby. He had Owensby exit the vehicle, putting him in the custody of Officer 152, who searched him. Officer 152 found a black cellphone, car keys, and a clear cellophane wrapper containing a white crystal-like residue.

[6] Meanwhile, Officer 382 and Officer 256 learned from Officer 353 that Markham had fled from the traffic stop. The officers, along with Officer 353's canine, searched for her in the nearby field. They found what they believed to be methamphetamine in a nearby bush and a clear plastic baggie containing a white rock-like substance. After the evidence was photographed, Officer 382 collected it and returned to the ICE Unit office, where the officer weighed and field-tested it. The substance tested positive for methamphetamine and weighed 55.76 grams.

[7] On November 9, 2017, Markham was located, and during an interview with Officer 152, she informed the police of the location of the handgun she had discarded in the field near the traffic stop. Officer 256 and Officer 382 returned to the field to search for the handgun, finding it where Markham had said it would be.

[8] That same day, officers also executed a search warrant for Owensby's Lexus and his cellphone. During the search of the vehicle, they found a backpack, inside of which was a document with Owensby's name on it, a soft case that would fit the handgun, a scale, multiple unused little plastic baggies, and two cellphones. ICE Unit undercover officer 150 (Officer 150) searched the cell

phone that Officer 152 had found on Owensby, recovering images of what appeared to be methamphetamine on a scale, a bag of what appeared to be methamphetamine, cash that included one hundred dollar bills, and Owensby holding cash.

[9] Goshen Police Officer Nick McCloughen interviewed Owensby. Owensby stated that he had been a drug dealer for twenty-four years; he also identified his source and revealed his knowledge of potential informants.

[10] On November 13, 2017, the State charged Owensby with Level 2 felony dealing in methamphetamine and Class A misdemeanor carrying a handgun without a license, which was enhanced to a Level 5 felony based on Owensby's prior felony conviction. A jury trial took place on August 20-21, 2018. During the trial, Markham testified to the following:

- that Owensby had told her to take the drugs and run.
- that she did not mention the handgun during her recorded statement to the police, but that she told them about it later when they asked.
- that when Officer 152 asked her whether Owensby had "asked [her] to take the drugs and run[,]" tr. vol II p. 238, she initially said that he had not, and that she had fled the vehicle because there was a warrant out for her arrest.
- that Officer 152 told her not to "'go down for this." *Id.* at 239.

[11] Before deliberations, the jury received the following instruction:

The crime of Dealing in Methamphetamine is defined by
law as follows:

A person who knowingly possesses with intent to deliver methamphetamine commits dealing in methamphetamine . . . .

\*\*\*

Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt:

1. The Defendant

2. knowingly possessed with intent to deliver

3. methamphetamine

4. and the amount of the drug involved was at least ten (10) grams.

If the State fails to prove any of these elements beyond a reasonable doubt, you should find the Defendant not guilty of Dealing in Methamphetamine, . . .

Appellant's Conf. App. Vol. II p. 85. The trial court instructed the jury on the definitions of the terms "knowingly" and "possession" but not on "intent to deliver."

[12] The jury found Owensby guilty as charged. During the September 20, 2018, sentencing hearing, the trial court sentenced Owensby to thirty years executed for the dealing in methamphetamine conviction and six years for the carrying a handgun without a license conviction with three years suspended, to be served

consecutively, for an aggregate term of thirty-three years executed and three suspended. Owensby now appeals.

# Discussion and Decision

## I. Sufficiency of the Evidence

[13] Owensby first argues that the evidence is insufficient to support his convictions. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the conviction and will neither assess witness credibility nor reweigh the evidence. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We will affirm unless no reasonable factfinder could find the elements of the crime proved beyond a reasonable doubt. *Id.*

[14] To convict Owensby of Level 2 felony dealing in methamphetamine, the State was required to prove beyond a reasonable doubt that Owensby possessed at least ten grams of methamphetamine with intent to deliver. I.C. § 35-48-4-1.1(a)(2)(A), (e)(1). To convict Owensby of Level 5 felony carrying a handgun without a license, the State was required to prove beyond a reasonable doubt that Owensby carried a handgun in any vehicle or on his person without being licensed to carry a handgun. I.C. § 35-47-2-1(a), (e)(2).

[15] Owensby argues that the evidence does not show beyond a reasonable doubt that he had actual possession of either methamphetamine or a handgun. The crux of Owensby's argument is that Markham's testimony was inconsistent and contradictory and therefore insufficient to support Owensby's convictions. In

addition to testifying that Owensby had told her to take the drugs and run, Markham testified that she did not mention the handgun during her recorded statement to the police, but that she told them about it later when they asked. She also testified that when Officer 152 asked her whether Owensby had "asked [her] to take the drugs and run[,]" tr. vol II p. 238, she initially said that he had not, and that she had fled the vehicle because there was a warrant out for her arrest. She further testified that Officer 152 told her not to "'go down for this." *Id.* at 239. The jury heard all of Markham's testimony and decided that her testimony that Owensby handed her the drugs and gun before she fled was credible. Owensby's argument is simply a request that we reassess witness credibility, which we may not do.

[16] In addition, the police found a backpack inside of Owensby's vehicle that contained a document with Owensby's name on it, a soft case that would fit the handgun, a scale, multiple unused little plastic baggies, and two cellphones. Owensby's cellphone contained images of what appeared to be methamphetamine on a scale, a bag of what appeared to be methamphetamine, cash that included one hundred dollar bills, and Owensby holding cash. Further, Officer McCloughen testified that Owensby told him that Owensby had been a drug dealer for twenty-four years.

[17] In sum, the evidence was sufficient to support his convictions.

## II. Jury Instruction

[18]    Owensby next argues that the trial court committed fundamental error by failing to instruct the jury on the element of "intent to deliver" in the dealing in methamphetamine charge.

[19]    An instruction serves to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Overstreet v. State*, 783 N.E.2d 1140, 1163 (Ind. 2003). Instruction of the jury is generally within the trial court's discretion and is reviewed for error. *Id.* Owensby, who did not object to the trial court's instructions, argues that the error was fundamental. Fundamental error applies only where the error was a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error made a fair trial impossible. *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006).

[20]    Specifically, regarding the element "knowingly possessed with intent to deliver" in the instruction on the dealing in methamphetamine charge, Owensby argues that the trial court erred by failing to instruct the jury on the definition of "intent to deliver" when it instructed the jury on the definitions of "knowingly" and "possessed." Owensby contends that as a result, the jury was given the impression that if it found that Owensby knowingly possessed methamphetamine, then it was a foregone conclusion that he also had the intent to deliver.

We disagree. First, the language of the instruction establishes that the State had to prove both that Owensby knowingly possessed the drugs and that he had the intent to deliver the drugs. And second, although the trial court did not instruct the jury on the definition of the term "intent to deliver," that phrase does not have a specific legal meaning and would not be confusing to a lay person on the jury. *See McKinley v. State*, 45 N.E.3d 25, 31 (Ind. Ct. App. 2015) ("Although defining 'intent to deliver' may have been preferable, terms in common use that can be understood by a person of ordinary intelligence do not always need to be defined."). Accordingly, the trial court did not commit error, fundamental or otherwise, by not defining this term for the jury.

## III. Appropriateness of Sentence

Finally, Owensby argues that the sentence is inappropriate in light of the nature of the offenses and his character pursuant to Indiana Appellate Rule 7(B). In considering an argument under Rule 7(B), we must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision— since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence . . . . " *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

Owensby was convicted of one Level 2 felony, for which he faced a term of ten to thirty years imprisonment, with an advisory sentence of seventeen and one-half years. Ind. Code § 35-50-2-4.5. The trial court imposed the maximum

thirty-year term. Owensby was also convicted of one Level 5 felony, for which he faced a term of one to six years, with an advisory sentence of three years. I.C. § 35-50-2-6(b). The trial court imposed a term of six years, with three years suspended. The trial court ordered the sentences to be served consecutively, for an aggregate term of thirty-three years executed and three suspended.

[24] With respect to the nature of the offenses, Owensby possessed more than fifty-five grams of methamphetamine and a handgun without a license. A Level 2 felony conviction for dealing in methamphetamine requires possession of at least ten grams of methamphetamine; here, Owensby had more than five times that amount. And based on Officer 382's testimony that drug users generally have between one and three grams of methamphetamine, Owensby had enough drugs to sell to between eighteen and fifty-five people. The ability and intent to deliver drugs to so many people have serious consequences and ramifications for the community in which the drugs are being sold. Further, after the police stopped his vehicle, Owensby told Markham to take and discard the contraband so that he could evade capture.

[25] With respect to Owensby's character, Owensby told Officer McCloughen that he had been dealing drugs for twenty-four years. In other words, Owensby enabled others to harm themselves through drug use for more than two decades. His past includes a litany of crimes in several states: he was convicted of domestic battery at least four times, unlawful possession of drug paraphernalia, and battery causing serious bodily harm in Nevada; criminal trespass and disorderly conduct in Arizona; and domestic battery by

strangulation in Alabama. In Indiana, Owensby was convicted of possession of methamphetamine. His history includes violation and revocation of parole and probation. Owensby's history shows that he is unable or unwilling to comply with the rule of law.

[26] In sum, Owensby's sentence imposed by the trial court is not inappropriate in light of the nature of the offenses and his character.

[27] The judgment of the trial court is affirmed.

Najam, J., and Robb, J., concur.