**Richard Dale HUFFMAN, Jr.**
**Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

**No. 49S00–9704–CR–260.**

Supreme Court of Indiana.

Oct. 4, 1999.

*See also,* 543 N.E.2d 360.

Monica Foster, Hammerle Foster Allen & Long–Sharp, Richard Kammen, McClure McClure & Kammen, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

DICKSON, J.

The defendant, Richard Dale Huffman, Jr., pled guilty to murder [1] and conspiracy to commit robbery.[2] He received the maximum sentence of sixty years [3] for murder and thirty years for conspiracy to commit robbery, to run concurrently. In this direct appeal, the defendant contends that the trial court erroneously enhanced his sentence by failing to consider mitigating circumstances and relying upon improper aggravating circumstances.

The factual nature of this case has been well-chronicled in our previous decisions. *State v. Huffman*, 643 N.E.2d 899 (Ind. 1994); *Huffman v. State*, 543 N.E.2d 360 (Ind.1989), *cert. den.* 497 U.S. 1011, 110 S.Ct. 3257, 111 L.Ed.2d 767 (1990). Briefly recited, on the evening of June 4, 1984, the victim and his friend were introduced at a bar to the defendant and his codefendants, Rick Asbury and Herb Underwood. The defendant, Asbury, and Underwood decided to rob the victim, and, after they had left the bar, the four men drove to a remote area. Underwood pulled the victim from the car, and the defendant and Underwood demanded his drugs. The defendant hit the victim twice, sending him to the ground. The defendant and Underwood kicked the victim, and Underwood then dragged him and stripped off all of his clothing, taking money and items from the victim's clothing. The defendant obtained a knife from Asbury and told the victim that, if he knew what was good for him, he would not say anything. The defendant and Asbury went to the back of

the car, where Underwood stated that he had to kill the victim because he could identify them. The defendant took a tire iron from the trunk, and he and Underwood both beat the victim with the tire iron. Underwood told Asbury that he had to hit the victim, and Asbury hit him twice on the shoulder with the tire iron but he was already dead.[4]

The defendant was tried by a jury and convicted of robbery, murder, conspiracy to commit robbery, and conspiracy to commit murder and was sentenced to death. On direct appeal, this Court affirmed his convictions for murder and conspiracy to commit murder and vacated his convictions for robbery and conspiracy to commit robbery. *Huffman*, 543 N.E.2d 360. In post-conviction proceedings, the post-conviction court reversed all of the convictions and the death sentence. We affirmed the reversal. *Huffman*, 643 N.E.2d 899.

On remand, in exchange for a dismissal of the remaining charges and an agreement not to seek the death penalty, the defendant agreed to plead guilty to murder and conspiracy to commit robbery and to testify against Underwood at Underwood's new trial. At the defendant's sentencing hearing after he had pled guilty, the trial court found:

> [T]he court is making its sentencing decision upon evidence from the past and present. The court finds these mitigating factors. That Mr. Huffman had alcoholic parents who did not provide the appropriate parenting necessary. The court finds these aggravating factors, that Mr. Huffman was convicted of three separate battery charges prior to his murdering the victim in this case. The

---

1. IND. CODE § 35–42–1–1 (1982).

2. IND. CODE §§ 35–41–5–2; 35–42–5–1 (1982).

3. The trial court sentenced the defendant to the presumptive forty years and enhanced it by the maximum twenty years.

4. A forensic pathologist testified that the victim suffered blunt force injuries to the head from the tire iron, internal organ injuries and internal bleeding from being stomped in the chest and abdomen, manual strangulation, and a laceration of the penis which tore large blood vessels, and that each injury by itself would have been fatal.

court finds that the nature of the offense is such that less than an enhanced sentence would depreciate the seriousness of the crime. The court, from the evidence, believes that Mr. Huffman and [his codefendant] became a unit and they are both equally responsible for the torturous death that [the victim] underwent. He was hit with a tire iron, he was kicked and stomped, in addition to the other two causes of his death. And the court also finds as an aggravator factor that the court believes from the testimony of Mr. Huffman at the trial of [his codefendant] that he greatly minimized his involvement. And that belies what the court has heard today about any rehabilitation that he has undergone. The court believes that he has not fully accepted his full role in this murder. And the court believes that's what the jury thought too in [his codefendant's] case. The court finds the aggravating factors outweigh the mitigating factors and sentences Mr. Huffman to ... 60 years on count two [murder] and for a period of thirty years on count four [robbery] and orders that those sentences be served concurrently. .

Record at 844–846.

■ The defendant contends that the trial court erred by failing to consider as a mitigating factor "uncontested evidence" that the defendant was extremely intoxicated the night this murder was committed. Brief of Appellant at 29. The defendant presented evidence during sentencing that he was intoxicated on the night of the murder, having voluntarily consumed alcohol and smoked marijuana from 10:00 a.m. the previous day to 3:00 a.m. on the day of the murder. The State presented evidence that the defendant drove the car multiple times during the day with "no automobile accidents, no crashes, ... no citations for bad driving," and that, after they left the bar at 3:00 a.m., the defendant drove to a very narrow access road and was able to "maneuver it and turn it around and leave the area and eventually

to drive the automobile to a service station [immediately after the murder and] ... get underneath the automobile and repair a muffler ...." Record at 784–85. In response, defense counsel asked its expert witness whether a problem drinker like the defendant could "function after having consumed large quantities of alcohol," and the witness replied that the defendant could "build up a tolerance. And of course [the defendant] had been drinking heavily for a number of years." Record at 792. Following this colloquy, the trial court specifically noted that it was considering the defendant's intoxication "as background to help the court decide what is an appropriate sentence." Record at 793.

The defendant in *Crawley v. State* made the same argument as the defendant in this case, contending that "the judge ignored uncontradicted evidence of [his] ... intoxication." 677 N.E.2d 520, 523 (Ind. 1997). We held that, although the failure to find mitigating circumstances clearly supported by the record may imply that they were improperly overlooked, "the sentencing judge is not obligated to credit these factors in the same manner as would the defendant, nor to explain why he or she has chosen not to find mitigating circumstances." *Id.* In addition, "[t]here is no duty on the trial court to make an affirmative finding expressly negating each potentially mitigating circumstance." *Id.* "The trial court is not obligated to view voluntary intoxication as a mitigating factor." *Burdine v. State,* 515 N.E.2d 1085, 1094 (Ind.1987). We recently stated that "we are reluctant to hold that mitigating consideration is necessarily required for sentencing when, at the time of an offense, the defendant was intoxicated." *Legue v. State,* 688 N.E.2d 408, 411 (Ind.1997). Citing *Wilson v. State,* 533 N.E.2d 114, 117 (Ind.1989), which held that the trial court did not err in finding no mitigating circumstances despite the fact that the defendant was drunk at the time of the offense, we held that "[f]inding [intoxication] to be mitigating may involve the consideration and evaluation of various factors, among them

the degree of intoxication and the defendant's culpability in the knowing and voluntary consumption of alcohol." *Legue*, 688 N.E.2d at 411. We concluded that "[t]hese matters are best left to the sound discretion of the trial court" and declined to find trial court error. *Id.*

In this case, the trial court specifically noted that it was considering the intoxication evidence "as background to help the court decide what is an appropriate sentence." Record at 793. Further, although there was no dispute as to the *amount* of alcohol and marijuana consumed by the defendant, the State's questions during sentencing demonstrate conflicting evidence as to the *degree* of intoxication. We decline to find that the trial court failed to consider intoxication as a mitigating circumstance.

■ The defendant also asserts that *res judicata* applied because the trial judge in his prior trial found intoxication to be a mitigating factor. For principles of *res judicata* to apply, there must have been a final judgment on the merits as to that issue. *See, e.g., Matter of Sheaffer*, 655 N.E.2d 1214, 1217 (Ind.1995). There has been no such final judgment as to the issue of mitigation. The original trial court judgment and sentence were reversed upon the defendant's post-conviction petition and proceedings. The defendant also points out that this Court, when addressing whether an intoxication instruction was warranted, noted on direct appeal, "Substantial evidence was introduced at trial which showed that all the parties, including the victim, had spent the entire evening drinking beer and smoking marijuana, and that all were quite intoxicated." *Huffman*, 643 N.E.2d at 900. However, contrary to the defendant's argument, this

mere factual recitation is not a final judgment on the merits as to whether the defendant's intoxication was a mitigating factor in sentencing. His claim of *res judicata* fails.

■ The defendant also challenges the aggravating factors identified by the trial court. He first contends that the trial court's statements that he had three prior battery *convictions* is erroneous because he only had two prior battery convictions and an allegation of battery as a juvenile, which was closed without an adjudication of delinquency.[5] *See* Reply Brief of Appellant at 4 ("[T]he court has treated the juvenile battery allegation as a conviction."). Citing *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), he argues that his due process rights were violated by this mistake. In *Tucker*, evidence that the defendant had three prior felonies was introduced during the guilt and sentencing phases of trial. Although it affirmed the underlying convictions, the U.S. Supreme Court remanded for a new sentencing hearing, finding that two of the three felonies were constitutionally invalid because the defendant was not given legal counsel in violation of *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The Court held that the "sentence [was] founded at least in part upon misinformation of constitutional magnitude [a *Gideon* violation]." *Tucker*, 404 U.S. at 447, 92 S.Ct. at 592, 30 L.Ed.2d at 596. Therefore, the defendant " 'was sentenced on the basis of assumptions concerning his criminal record which were materially untrue.' " *Id.* (quoting *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690,

---

**5.** The presentence report submitted by the defendant contained information regarding a 1982 conviction for battery on a police officer, a 1984 conviction for battery with injury, and an allegation of assault and battery in 1973 when the defendant was a juvenile, noting that the matter was "eventually closed." Record at 542. The defendant's presentence report also listed a 1981 conviction for disorderly conduct, 1982 convictions for fleeing a police officer, criminal recklessness with a vehicle, and disorderly conduct, and a 1983 conviction for theft. The defendant also escaped from jail after his arrest in the present case.

1693 (1948)).[6] The Court held that the question was whether the defendant's sentence in this case "might have been different if the sentencing judge had known that at least two of [the defendant's] previous convictions had been unconstitutionally obtained." *Tucker*, 404 U.S. at 448, 92 S.Ct. at 592, 30 L.Ed.2d at 597. The Court concluded:

> We agree with the Court of Appeals that the answer to this question must be "yes." For if the trial judge in 1953 had been aware of the constitutional infirmity of two of the previous convictions, the factual circumstances of the respondent's background would have appeared in a dramatically different light at the sentencing proceeding. Instead of confronting a defendant who had been legally convicted of three previous felonies, the judge would then have been dealing with a man who beginning at age 17, had been unconstitutionally imprisoned for more than ten years, including five and one-half years on a chain gang.

*Id.* (footnote omitted).

The defendant also cites as dispositive the Seventh Circuit case of *United States ex rel. Welch v. Lane*, 738 F.2d 863, 864 (7th Cir.1984). In *Welch*, the defendant was convicted of aggravated kidnaping, rape, and deviate sexual assault. He had previously been charged with *armed* robbery, but pled guilty to a lesser charge of *simple* robbery. The court sentenced the defendant to the maximum sentences allowed. Although the trial court had been properly informed that the defendant was convicted of simple robbery, the court stated that "a significant factor in [its] determination of the sentence here is that this defendant has within the past ten years been convicted of the offense of armed robbery which is an offense of the same magnitude ... as the rape, aggravated kidnapping and deviate sexual assault cases of which he is now convicted." *Id.* at 864. In determining whether a *Tucker* violation occurred, the Seventh Circuit noted, "The difference between robbery and armed robbery is substantial under current Illinois law.... [T]he sentencing court generally has less discretion to be lenient when sentencing for [armed robbery type felonies]." *Id.* at 865 n. 2. Further, the court found that the sentencing court relied on the misinformation, noting that the reliance was "explicit and incontrovertible. Indeed, it is difficult to imagine a case in which the court's reliance on the inaccurate information could be any clearer. The sentencing judge himself said that the supposed prior conviction for armed robbery was a 'significant factor' in his decision." *Id.* at 866. Therefore, the cause was remanded for a new sentencing hearing.

Under Indiana's sentencing statute in effect at the time of the offense, the trial

---

**6.** The defendant in *Townsend* was not provided legal counsel. During sentencing, the trial court referred to many prior "convictions" of which the defendant had been acquitted or for which the charges had been dismissed. The Court stated:

> Counsel, had any been present, would have been under a duty to prevent the court from proceeding on such false assumptions and perhaps under a duty to seek remedy elsewhere if they persisted. Consequently, on this record we conclude that, while disadvantaged by lack of counsel, this prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue.

*Townsend*, 334 U.S. at 740–41, 68 S.Ct. at 1255, 92 L.Ed. at 1693. The Court concluded, "Such a result, whether caused by carelessness or design, is inconsistent with due process of law, and such a conviction cannot stand." *Id.* at 741, 68 S.Ct. at 1255, 92 L.Ed. at 1693. The Court clarified its holding by stating:

> We would make clear that we are not reaching this result because of petitioner's allegation that his sentence was unduly severe. ... It is not the duration or severity of this sentence that renders it constitutionally invalid; it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, that renders the proceedings lacking in due process.

*Id.*

court was permitted to consider, as aggravating factors justifying enhancement, the fact that the defendant "has a history of criminal *activity.*" IND. CODE § 35–4.1–4–7(c)(2) (1982) (emphasis added).[7] The statute does not require the court to consider only criminal convictions; rather, the court is statutorily entitled to consider *all* criminal activity. Under this statute, we have upheld a trial court's reliance on juvenile activities in determining that a sentence enhancement is warranted. *Totten v. State*, 486 N.E.2d 519, 522 (Ind.1985). Applying the later version of this statute, we have held that " '[a] juvenile history detailed in a pre-sentence report filed with the trial court may suffice as evidence of a criminal history, and thus constitute an aggravating circumstance.' " *Hollins v. State*, 679 N.E.2d 1305, 1308 (Ind.1997) (citations omitted). Further, the sentencing court is not limited to the criteria listed in this statute in determining the sentence. IND. CODE § 35–4.1–4–7(d).

■ However, we agree with the defendant that one of the three identified battery convictions was not a conviction at all. According to the sentencing report, this matter occurred when the defendant was a juvenile and was closed without an adjudication of delinquency on the underlying facts. The disposition is simply noted as "Closed." This is not significant criminal activity. We have previously held that "[w]hen a juvenile proceeding ends without a disposition, the mere fact that a petition was filed alleging delinquency does not suffice as proof of a criminal history." *Day v. State*, 560 N.E.2d 641, 643 (Ind. 1990). A juvenile court must determine that the acts were committed to demonstrate a history of criminal activity. *Id.* When there is no factual determination of delinquency, the petition alone may not be used to support a sentence enhancement.

■ Despite our agreement that this one juvenile incident did not constitute criminal activity within the scope of the statute, two prior convictions remain to establish a history of criminal activity.

■ The defendant also contends that the trial court improperly relied upon evidence obtained during his codefendant's trial, over which the judge also presided, in finding two of the aggravating factors used to enhance the sentence.[8] Even if we exclude these two aggravators, others remain. A single proper aggravator is sufficient to sustain an enhanced sentence. *See Page v. State*, 689 N.E.2d 707, 712 (Ind.1997); *Hollins*, 679 N.E.2d at 1308; *Gregory–Bey v. State*, 669 N.E.2d 154, 159 (Ind.1996); *Kingery v. State*, 659 N.E.2d 490, 496 (Ind.1995).

As explained *supra*, even if the juvenile incident was improperly considered, the trial court properly found criminal activity from two other prior convictions for battery. Additionally, the trial court determined "that the nature of the offense is such that less than an enhanced sentence would depreciate the seriousness of the crime." Record at 845. We have held that it is not error to find as an aggravating circumstance that a sentence less than the *enhanced* term would depreciate the seriousness of the crime committed. *Ector v. State*, 639 N.E.2d 1014, 1015 (Ind.1994); *Evans v. State*, 497 N.E.2d 919, 923–24 (Ind.1986). Thus, this aggravating circumstance was properly considered in enhancing the defendant's sentence. Accordingly, the defendant's enhanced sentence is sufficiently supported by at least one valid

7. This statute was repealed by P.L. 311–1983, section 49, and the new sentencing guidelines, codified at Indiana Code section 35–38–1–7, were enacted under P.L. 311–1983, section 3 and subsequent amendments.

8. Specifically, the defendant challenges the trial court's sentencing findings: "[T]he Court believes from the *testimony of Mr. Huffman at*

*. . . the trial of Mr. Underwood* that he greatly minimized his involvement. . . . The court believes that he has not fully accepted his full role in this murder" and that he and his codefendant "became a unit and they are both equally responsible for the torturous death that [the victim] underwent." Record at 845–46 (emphasis added).

aggravating factor, irrespective of any other potential claims of error.

The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN, SELBY, and BOEHM, JJ., concur.