# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 20 2019, 5:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Craig V. Braje
Rachel E. Doty
Braje, Nelson & Janes, LLP
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tron Gorbonosenko,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 20, 2019

Court of Appeals Case No.
19A-CR-102

Appeal from the LaPorte Superior Court

The Honorable Michael S. Bergerson, Judge

Cause No.
46D01-1710-F4-990

**Crone, Judge.**

# Case Summary

[1] Tron Gorbonosenko appeals his convictions and sentence for two counts of level 5 felony reckless homicide. He asserts that his convictions must be reversed because they are unsupported by sufficient evidence. He also contends that the trial court abused its discretion in sentencing him by failing to consider certain mitigating factors, finding improper aggravating factors, failing to support the imposition of consecutive sentences with a detailed sentencing statement, and relying on speculative facts. We conclude that Gorbonosenko's convictions are supported by sufficient evidence and that the trial court committed no error in sentencing him. Therefore, we affirm.

# Facts and Procedural History

[2] The facts most favorable to the jury's verdict[1] show that on the evening of October 6, 2017, Gorbonosenko drove his black Ford Mustang to a martial arts studio to watch his children perform. Robin Burian was parked across the street from the martial arts studio when he noticed Gorbonosenko's Mustang attempt to turn into the entrance of the studio parking lot, turn wide, and drive over the curb and sidewalk. Burian continued watching the Mustang as it unsuccessfully attempted to pull into a parking space. On its second attempt to pull into the space, the Mustang scraped the car parked in the adjoining space. The Mustang then pulled too far into the parking space, drove over the parking

---

[1] Gorbonosenko fails to set forth the facts in his appellant's brief in accordance with the applicable appellate standard of review as required by Indiana Appellate Rule 46(A)(6)(b).

block, and came to a rest against a telephone pole. Burian saw Gorbonosenko exit his vehicle and walk toward the studio. Burian also exited his vehicle and walked over to the Mustang to see whether the car next to it was damaged. Burian observed that the car had a six- to eight-inch scratch where the Mustang had scraped it.

[3] Burian was worried that Gorbonosenko might be intoxicated, so Burian walked over to Gorbonosenko, who was standing outside the martial arts studio. Burian stood next to Gorbonosenko a short time, smelled alcohol on Gorbonosenko's breath, and noticed that Gorbonosenko was leaning back and forth. Burian returned to his vehicle and called 911. Meanwhile, Gorbonosenko entered the martial arts studio and sat between his wife, who had driven separately, and Beth McCoy. McCoy noticed that Gorbonosenko smelled like liquor.[2]

[4] At about 6:17 p.m., La Porte City Police Sergeant Patrick Sightes, Corporal Daniel Reed, and Officer Robert Hagler arrived at the martial arts studio in response to Burian's 911 call. Sergeant Sightes and Corporal Reed approached the black Mustang while Officer Hagler ran the Mustang's plates to identify its owner. The officers learned that the Mustang was registered to Gorbonosenko. Tr. Vol. 3 at 127. Corporal Reed knew Gorbonosenko because Gorbonosenko

---

[2] Gorbonosenko inaccurately claims that "[McCoy] stated that Gorbonosenko displayed no difficulty in walking to or from the studio." Appellant's Br. at 8 (citing Tr. Vol 3 at 220). McCoy testified only that she did not notice whether Gorbonosenko had any trouble walking by her to sit down and that he did not have any trouble walking out of the studio. Tr. Vol. 3 at 220.

was a LaPorte paramedic or EMT who had responded a few times when Corporal Reed's father was sick. *Id.* at 128. The three officers walked to the martial arts studio and looked in the window to find Gorbonosenko. Corporal Reed pointed to Gorbonosenko, who was sitting with his back to the window. *Id.* at 129-30. Sergeant Sightes tapped on the window, which prompted Gorbonosenko to turn around. Gorbonosenko made eye contact with Sergeant Sightes, who motioned for Gorbonosenko to come outside. *Id.* at 130-31. At about 6:20 p.m., McCoy heard a tap on the window behind her and saw a police officer motion to Gorbonosenko to come outside. After Gorbonosenko left, McCoy said to her husband, "[T]here's [alcohol] on board with [that] one." *Id.* at 212.

[5] When Gorbonosenko came outside, Sergeant Sightes met him at the door and told him that the officers needed to talk to him about his car. *Id.* at 131. Sergeant Sightes had no further conversation with Gorbonosenko. *Id.* Gorbonosenko and the officers walked to his car, and Gorbonosenko's wife soon joined them. Officer Hagler asked Gorbonosenko for his license and registration and whether he had been drinking or taking medications that would impair his ability to drive. Gorbonosenko answered, "No." *Id.* at 184. The officers did not give Gorbonosenko a portable breath test, breathalyzer, or standardized field sobriety test to determine if he was intoxicated. *Id.* at 132, 157, 185. They looked in Gorbonosenko's car from the outside but did not search it. *Id.* at 132, 159, 186-87. None of the officers spoke to Burian or

McCoy.[3] *Id*. at 133, 159, 185. Corporal Reed mostly spoke with Gorbonosenko's wife. *Id*. at 159. The officers did not prepare any documentation to memorialize the incident. *Id*. at 133, 159, 187. Officer Hagler spoke with the owner of the car that had been scraped by the Mustang and informed her that "due to the minimal damage" and the fact that Gorbonosenko did not "show any signs of impairment" the police did not have to do a report. *Id*. at 186. The officers left the scene at 6:30 p.m., about thirteen minutes after they arrived.[4] *Id*. at 134.

[6] About an hour after the officers left the martial arts studio, Gorbonosenko crashed his Mustang directly into Donald and Amanda Kaczmarek's minivan near the intersection of U.S. Highway 20 and Bootjack Road, killing them both instantly. *Id*. at 134.[5] Erica Schascheck had been driving westbound on Highway 20 somewhere behind the minivan and saw the minivan rise into the air and fall back down. Schascheck pulled over and called 911. The vehicles had come to rest in the westbound lane of Highway 20, straddling the fog line on the shoulder of the road. Ex. 16. Both cars had extensive front end damage. The cars were aligned headlamp to headlamp, which indicated that they had struck each other head on and had come to a stop almost immediately. Tr. Vol.

---

[3] Gorbonosenko inaccurately claims that the "officers interviewed the 911 caller at the studio." Appellant's Br. at 7.

[4] Officer Hagler testified that he was at the scene only seven minutes. Tr. Vol. 3 at 187.

[5] Officer Sightes testified that he found out that Gorbonosenko "had been in a fatal crash about an hour later." Tr. Vol. 3 at 134.

5 at 188-89. The records obtained from the Mustang's power train control module showed that the Mustang had been traveling between fifty-five and sixty-one miles per hour during the twenty-five seconds prior to the crash and that Gorbonosenko had not applied the brakes before the accident. *Id*. at 221-22.

[7] Police officers and ambulances arrived at the accident scene. Captain Pat Cicero approached Gorbonosenko and smelled the odor of alcohol coming from him. Tr. Vol. 4 at 82. Detective Michael Raymer found two 200-milliliter bottles of whiskey in Gorbonosenko's car, an empty one on the passenger-side floor and a partially empty one between the driver's seat and the center console. *Id*. at 222-23. The paramedic who performed the initial assessment of Gorbonosenko did not administer any medications to him. Due to the severity of Gorbonosenko's injuries, he was flown to a hospital. The flight nurse, Heidi Wiskotoni, administered Zofran to Gorbonosenko to alleviate his nausea, but did not administer any other medications. Wiskotoni smelled the odor of alcohol coming from Gorbonosenko, who was semiconscious during the flight. *Id*. at 44.

[8] At the hospital, Deputy Jon Samuelson immediately smelled alcohol upon entering Gorbonosenko's private room, and as he got closer to Gorbonosenko the odor grew stronger. *Id*. at 161. Deputy Samuelson read Gorbonosenko Indiana's implied consent warning and asked for permission to take a blood sample. *Id*. at 162. Gorbonosenko agreed, but Deputy Samuelson thought Gorbonosenko appeared confused and disoriented from the accident and

decided to apply for a search warrant. Ultimately, Gorbonosenko's blood draw was performed almost three and a half hours after the accident. *Id*. at 187.

[9] The Indiana State Department of Toxicology test results of Gorbonosenko's blood draw showed that his blood alcohol concentration at the time of the blood draw was 0.120 plus or minus 0.005 gram per 100 milliliters of whole blood. Tr. Vol. 5 at 61. The forensic toxicologist estimated that at the time of the accident, Gorbonosenko's blood alcohol content was likely between 0.153 and 0.236 gram per 100 milliliters of whole blood.[6] *Id*. at 84-85, 145. Impaired judgment and slowed information processing occur at blood alcohol content levels of 0.04 or 0.05. *Id*. at 66-67. Gorbonosenko's blood also tested positive for Lorazepam, a benzodiazepine with effects similar to those of alcohol. *Id*. at 94-95. Lorazepam can increase the effects of alcohol and lead to greater intoxication. *Id*. at 98.

[10] The State charged Gorbonosenko with two counts of level 4 felony operating while intoxicated causing death with a blood alcohol concentration of at least 0.150 gram of alcohol per 100 milliliters of blood; two counts of level 5 felony reckless homicide; and two counts of level 5 felony operating a vehicle while intoxicated causing death. A jury found Gorbonosenko not guilty of the level 4 felonies and guilty of the level 5 felonies. The trial court determined that the

---

[6] The forensic toxicologist testified that the lowest blood alcohol content that Gorbonosenko could have had at the time of the accident was 0.079, which was based on the assumption that at the time of the accident his body had not yet absorbed any of the alcohol that he had consumed. Tr. Vol. 5 at 145-46.

reckless homicide counts and the driving while intoxicated counts were the same offense for double jeopardy purposes, merged the latter counts with the former counts, and entered judgment of conviction for two counts of reckless homicide.

[11] In sentencing Gorbonosenko, the trial court found no mitigating circumstances and four aggravating circumstances: his criminal history; his employment as a paramedic in the LaPorte County Emergency Management System; his lack of remorse; and that the advisory sentence would depreciate the seriousness of the crimes. Appealed Order at 4. The trial court found that the aggravating circumstances outweighed the mitigating circumstances and sentenced Gorbonosenko to consecutive terms of five and a half years for each reckless homicide conviction, executed, for an aggregate term of eleven years. This appeal ensued.

## Discussion and Decision

## Section 1 – Sufficient evidence supports Gorbonosenko's reckless homicide convictions.

[12] Gorbonosenko challenges the sufficiency of the evidence supporting his reckless homicide convictions.[7] We note that in violation of our appellate rules,

---

[7] Gorbonosenko also argues that the evidence was insufficient to support a conviction for operating a vehicle while intoxicated causing death. However, that issue is not ripe for review because judgment of conviction was not entered for those counts. *See Gilbert v. State*, 874 N.E.2d 1015, 1017 n.3 (Ind. Ct. App. 2007) (declining to review sufficiency challenge to jury's guilty verdict on criminal recklessness charge because trial court neither entered judgment of conviction nor sentenced Gilbert on that count), *trans. denied* (2008).

Gorbonosenko failed to provide the standard of review in his sufficiency argument. *See* Ind. Appellate Rule 46(A)(8)(b) ("The argument must include for each issue a concise statement of the applicable standard of review."). In reviewing a claim of insufficient evidence, we do not reweigh the evidence or judge the credibility of witnesses, and we consider only the evidence that supports the judgment and the reasonable inferences arising therefrom. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). It is "not necessary that the evidence 'overcome every reasonable hypothesis of innocence.'" *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007) (quoting *Moore v. State*, 652 N.E.2d 53, 55 (Ind. 1995)). "We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Bailey*, 907 N.E.2d at 1005.

[13] To convict Gorbonosenko of the two counts of reckless homicide as charged, the State was required to prove beyond a reasonable doubt that he recklessly killed another human being by driving a vehicle while intoxicated and causing a crash which killed Donald and Angela Kaczmarek. Appellant's App. Vol. 2 at 129-30; Ind. Code § 35-42-1-5. Intoxicated means under the influence of alcohol, a drug, or a controlled substance "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." Ind. Code § 9-13-2-86. Gorbonosenko contends that there was insufficient evidence that he was driving his vehicle while in an intoxicated state. Specifically, Gorbonosenko asserts that no blood testing or breath analysis was performed on him at the scene of the accident and the forensic

toxicologist testified only to what his blood alcohol content *could* have been at the time of the collision.[8]

[14] The evidence in support of the verdict shows that about an hour and a half before the accident, Burian witnessed Gorbonosenko driving and parking erratically at the martial arts studio, and both Burian and McCoy detected the smell of alcohol emanating from Gorbonosenko. Shortly after the accident while still at the scene of the crash, a police officer smelled alcohol coming from Gorbonosenko, and during Gorbonosenko's transport to the hospital, the flight nurse also smelled alcohol coming from him. At the scene of the crash, police found one empty bottle and one partially empty bottle of whiskey in Gorbonosenko's car. Further, the forensic toxicologist testified that Gorbonosenko's blood alcohol content at the time of the accident was between 0.152 and 0.236 gram per 100 milliliters. Tr. Vol. 5 at 84-85. From this evidence, a reasonable factfinder could have concluded beyond a reasonable doubt that Gorbonosenko was driving his vehicle while intoxicated. Gorbonosenko's argument is merely a request to reweigh the evidence and

---

[8] Gorbonosenko also asserts that "a urinalysis performed on [him] at the hospital within the first hour of his arrival returned negative for any tested-for substances." Appellant's Br. at 12 (citing Tr. Vol. 5 at 158). Gorbonosenko fails to state what the "tested-for substances" were. Our review of the transcript shows that his urine was screened for benzodiazepines, including Lorazepam, which his blood tested positive for. Gorbonosenko ignores that the forensic toxicologist went on to testify that even if Gorbonosenko had Lorazepam in his system when he was brought to the hospital, it was "not surprising that the urine was negative" for Lorazepam because Lorazepam is not completely reactive to the enzymatic test that hospitals use to screen urine. Tr. Vol. 5 at 158-59.

judge witness credibility, which we must decline.  Accordingly, we affirm Gorbonosenko's convictions for reckless homicide.

## Section 2 – The trial court did not abuse its discretion in sentencing Gorbonosenko.

[15]   Gorbonosenko was convicted of level 5 felony reckless homicide, which has a sentencing range of one to six years and an advisory sentence of three years. Ind. Code § 35-50-2-6.  In sentencing Gorbonosenko, the trial court found no mitigating circumstances and four aggravating circumstances:

- The criminal history of [Gorbonosenko]; especially with a prior history of operating a motor vehicle under the influence of alcohol as an adult and as a juvenile.

- That as a licensed paramedic and as an employee of the LaPorte County Emergency Management System, [Gorbonosenko] misused his position of trust in the public safety community.

- That prior to today, [Gorbonosenko] has shown little or no remorse for causing the deaths of Donald and Angela Ka[c]zmarek and only … expressed his remorse when faced with the prospect of being held accountable and being sent to prison.

- [That] the Advisory sentence would depreciate the seriousness of the crimes.

Appealed Order at 4.  The trial court found that the aggravating circumstances outweighed the mitigating circumstances and sentenced Gorbonosenko to

consecutive terms of five and a half years for each reckless homicide conviction, executed, for an aggregate term of eleven years.

[16] Initially, we note that although Gorbonosenko asserts that his sentence is inappropriate pursuant to Indiana Appellate Rule 7(B), he does not actually undertake a Rule 7(B) analysis. "Failure to put forth a cogent argument acts as a waiver of the issue on appeal." *Whaley v. State*, 843 N.E.2d 1, 18 n.15 (Ind. Ct. App. 2006), *trans. denied*; *see also* Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning."). Consequently, Gorbonosenko has waived his inappropriateness claim under Appellate Rule 7(B). *See McBride v. State*, 992 N.E.2d 912, 920 (Ind. Ct. App. 2013) (concluding that defendant failed to make cogent argument regarding nature of crime or his character and therefore waived issue), *trans. denied*.

[17] Gorbonosenko's contentions focus on the trial court's sentencing statement and the reasons in support of imposing his sentence. Given the substance of his arguments, we will review his sentence for an abuse of discretion.[9] *See Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007) ("So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion."), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs if

---

[9] Whether a sentence is inappropriate under Appellate Rule 7(B) and whether the trial court abused its discretion in sentencing are two separate analyses. *Hape v. State*, 903 N.E.2d 977, 1000 n.12 (Ind. Ct. App. 2009), *trans. denied*.

the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. at 491. A trial court abuses its discretion during sentencing by: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id*. at 490-91.

### 2.1 – The trial court did not abuse its discretion in failing to find mitigating factors.

[18] In challenging his sentence, Gorbonosenko first contends that the trial court abused its discretion in failing to find mitigating factors. "When a defendant offers evidence of mitigators, the trial court has the discretion to determine whether the factors are mitigating, and it is not required to explain why it does not find the proffered factors to be mitigating." *Johnson v. State*, 855 N.E.2d 1014, 1016 (Ind. Ct. App. 2006), *trans. denied* (2007). The trial court is not obligated to accept the defendant's arguments as to what constitutes a mitigating factor and is not required to give the same weight to proffered mitigating factors as the defendant does. *Healey v. State*, 969 N.E.2d 607, 616 (Ind. Ct. App. 2012). A defendant who alleges that the trial court failed to identify a mitigating factor has the burden to establish that the proffered factor is both significant and "clearly supported by the record." *Anglemyer*, 868 N.E.2d at 493.

[19]   Gorbonosenko claims that the trial court abused its discretion by failing to find five potential mitigating factors: (1) his expression of deep remorse; (2) his strong character, generous attitude, and caring personality; (3) his limited criminal history; (4) the financial hardship his family would experience as a result of his imprisonment, and (5) he is unlikely to reoffend because his injuries were so severe that he is unlikely to drive again.

[20]   Turning first to Gorbonosenko's expression of remorse, the trial court found that Gorbonosenko showed little remorse for his offenses and expressed remorse only when he faced the prospect of being sent to prison. We observe that "a trial court's determination of a defendant's remorse is similar to its determination of credibility: without evidence of some impermissible consideration by the trial court, we accept its decision." *Sandleben v. State*, 29 N.E.3d 126, 136 (Ind. Ct. App. 2015), *trans. denied*. Thus, the credibility of Gorbonosenko's expression of remorse was within the province of the trial court, and we do not judge credibility on appeal. The trial court was free to find that Gorbonosenko's expression of remorse lacked credibility.

[21]   As for Gorbonosenko's character, he directs us to his wife's testimony that he assisted with accidents while off duty and followed up on the status of people that he transported to the hospital. The trial court weighed this evidence and concluded that as a licensed paramedic, Gorbonosenko misused his position of trust in the public safety community. Because we do not reweigh evidence or judge witness credibility on appeal, we conclude that the trial court was well within its discretion to reject Gorbonosenko's character as a mitigating factor.

As for Gorbonosenko's criminal history, he asserts that he led a law-abiding life for a long period of time before he committed the current offenses. Although a trial court may consider a defendant's lack of criminal history to be a mitigating circumstance, the court is under no obligation to give that circumstance significant weight. *Townsend v. State*, 860 N.E.2d 1268, 1272 (Ind. Ct. App. 2007), *trans. denied*. Gorbonosenko has a 1999 conviction for operating a motor vehicle while under the influence of alcohol and a 1996 juvenile adjudication based on operating a motor vehicle while intoxicated. Although the conviction and juvenile adjudication are remote in time, they involve exactly the same conduct that underlies the current offenses, which caused the death of two people. The trial court did not abuse its discretion in declining to find Gorbonosenko's limited criminal history to be a mitigating factor.

As for the financial hardship on Gorbonosenko's family as a result of his imprisonment, we note that "[m]any persons convicted of serious crimes have one or more children and, absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship." *Dowdell v. State*, 720 N.E.2d 1146, 1154 (Ind. 1999). Although Gorbonosenko has two children, ages eight and eleven, with his wife, he advanced no special circumstances that would result in undue hardship. Thus, we cannot say that the trial court abused its discretion in declining to find this proffered mitigator.

As for the unlikelihood that Gorbonosenko will reoffend, we note that in general, this factor may be mitigating when it is based on the defendant's character and attitudes. *See* Ind. Code § 35-38-1-7.1(b)(8) (providing that trial

court may consider as a mitigating factor that a defendant's character and attitudes indicate that the defendant is unlikely to commit another crime). Here, Gorbonosenko argues that he is unlikely to reoffend because his serious injuries will prevent him from driving. His injuries resulted from his own criminal conduct. Accordingly, we find no abuse of discretion here.

### 2.2 – The trial court did not abuse its discretion in finding aggravating factors.

[25] Gorbonosenko challenges all the aggravating factors found by the trial court. First, he contends that the trial court's consideration of his juvenile history as an aggravating factor to support an enhanced sentence violated his rights under the Sixth Amendment to the United States Constitution, citing *Pinkston v. State*, 836 N.E.2d 453 (Ind. Ct. App. 2005), *trans. denied* (2006). Gorbonosenko's argument ignores our supreme court's decision in *Ryle v. State*, 842 N.E.2d 320, 321-22 (Ind. 2005), *cert. denied* (2006), in which the court held that juvenile adjudications are an exception to the requirement, articulated in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), that all facts used to enhance a sentence over the statutory maximum must be found by a jury beyond a reasonable doubt. *See also Mitchell v. State*, 844 N.E.2d 88, 92 (Ind. 2006) (noting that prior juvenile adjudications may be considered as a prior conviction for purposes of sentencing under *Blakley v. Washington*, 542 U.S. 296 (2004)). Therefore, the trial court properly considered Gorbonosenko's juvenile record as part of his criminal history.

[26] Second, Gorbonosenko asserts that the trial court erred in finding that as a paramedic employed by the LaPorte County Emergency Management System,

he misused his position of trust in the public safety community for two reasons: the trial court misinterpreted the plain language of Indiana Code Section 35-38-1-7.1(a)(8); and the finding is unsupported by the record. Section 35-38-1-7.1(a)(8) provides that the trial court may consider as an aggravating factor that the defendant "was in a position having care, custody, or control of the victim of the offense." However, Section 35-38-1-7.1(c) specifically provides that in determining sentence, the trial court is not limited by the criteria enumerated in Section 35-38-1-7.1(a) and -(b). The trial court's finding does not appear to be based on Section 35-38-1-7.1(a)(8), and the court was free to find other aggravating circumstances. Accordingly, Gorbonosenko's argument that the trial court misinterpreted Section 35-38-1-7.1(a)(8) is without merit.

[27] Equally unavailing is Gorbonosenko's argument that the finding is unsupported by the record. As the State points out, as a paramedic employed by the LaPorte County Emergency Management System, Gorbonosenko should have been aware of the dangers of driving while intoxicated and was in a key position to protect the public from harm.[10] As such, the trial court was within its discretion

---

[10] Gorbonosenko asserts that the evidence and testimony at trial was that the three LaPorte City Police officers did not know Gorbonosenko in either a personal or official capacity. Appellant's Br. at 22. This is a misrepresentation of the record: Officer Reed knew Gorbonosenko because Gorbonosenko was a LaPorte EMT who had responded a few times when Officer Reed's father was sick. Tr. Vol. 3 at 128. We also note that the trial court did not find much of the police officers' testimony to be credible. In its sentencing order, the trial court found that

> these three officers had the temerity to testify under oath before a jury that no tests were performed nor was the defendant taken off the street because all three did not detect the odor of alcohol so readily apparent to everyone else. **Their testimony was an insult to the intelligence of the court and to the members of the jury.**

Appealed Order at 3.

to find that Gorbonosenko's employment was an aggravating factor. *See Collins v. State*, 643 N.E.2d 375, 382 (Ind. Ct. App. 1994) (concluding that defendant's previous occupation as a former police officer was a valid aggravating factor because it demonstrated that he was placed in a position of trust and was trained in the law), *trans. denied* (1995).

Third, Gorbonosenko argues that the trial court incorrectly interpreted his exercise of the privilege against self-incrimination as a lack of remorse in support of an enhanced sentence. He asserts that lack of remorse should not be considered as an aggravating factor where the expression of remorse is affected by the defendant's assertion of innocence. Gorbonosenko's argument seems to be that because the trial court found that he expressed remorse only when faced with the prospect of being sent to prison, the court's reliance on the timing of his expression of remorse was improper. In support of his argument, he cites *Dockery v. State*, 504 N.E.2d 291 (Ind. Ct. App. 1987), which is clearly distinguishable. In that case, Dockery was charged with twelve counts of child molesting. The *Dockery* court concluded that the trial court erred in finding lack of remorse as an aggravating factor, based on the following reasoning:

> While lack of remorse may be a proper aggravating circumstance in some cases, we do not believe it should be considered as a factor in the present case. The defendant has the right to protest his innocence at all stages of the criminal proceeding including sentencing. This is particularly true in instances where the evidence of criminal acts comes solely from the victims without any corroborating evidence, physical or otherwise.

In the present case, the finding of lack of remorse was based solely on Dockery's persistent denial of his guilt. He had never made any statements that were inconsistent with this claim of innocence. The evidence against him was comprised solely of the victims' testimony and was not corroborated by physical evidence, such as medical reports. Under these circumstances, the defendant's continued assertion of his innocence should not be used as an aggravating factor under the guise of lack of remorse.

*Id.* at 297. In contrast to *Dockery*, we find nothing in the record to persuade us that the trial court improperly based its finding of lack of remorse on Gorbonosenko's claim of innocence.

[29] Finally, Gorbonosenko claims that the trial court improperly enhanced his sentence on the basis that the imposition of the advisory sentence would depreciate the seriousness of his crimes. To the contrary, our supreme court has consistently held that "it is not error to enhance a sentence based upon the aggravating circumstance that a sentence less than the enhanced term would depreciate the seriousness of the crime committed." *Mathews v. State*, 849 N.E.2d 578, 590 (Ind. 2006); *see also Walter v. State*, 727 N.E.2d 443, 447 (Ind. 2000); *Huffman v. State*, 717 N.E.2d 571, 577 (Ind. 1999); *Ector v. State*, 639 N.E.2d 1014, 1016 (Ind. 1994); *Evans v. State*, 497 N.E.2d 919, 923-24 (Ind. 1986). We find no error here.

### *2.3 – The trial court did not abuse its discretion by failing to articulate specific reasons for imposing both enhanced and consecutive terms.*

[30]   Next, Gorbonosenko contends that the trial court erred by failing to articulate specific reasons for imposing both enhanced and consecutive terms. In support of this contention, he relies on *Fry v. State*, 521 N.E.2d 1302 (Ind. 1988). However, *Fry* does not help Gorbonosenko because it was decided before the adoption of our advisory sentencing scheme. In *Anglemyer*, our supreme court considered appellate review under the advisory sentencing scheme and held that sentencing statements are required whenever a trial court imposes a sentence for a felony offense:

> [T]he statement must include a reasonably detailed recitation of the trial court's reasons for imposing a particular sentence. If the recitation includes a finding of aggravating or mitigating circumstances, then the statement must identify all significant mitigating and aggravating circumstances and explain why each circumstance has been determined to be mitigating or aggravating.

868 N.E.2d at 490.

[31]   We find no deficiencies in the trial court's sentencing statement. The trial court explained that it found no mitigating factors, identified four aggravating factors, and explained why it found those four factors to be aggravating. "The imposition of consecutive sentences is a separate and discrete decision from sentence enhancement, although both may be dependent upon the same aggravating circumstances." *Mathews*, 849 N.E.2d at 589. "As with sentence enhancement, even a single aggravating circumstance may support the

imposition of consecutive sentences." *Id*. Here, the four aggravating factors are sufficient to support both enhanced and consecutive sentences. *See id*. (concluding that although "depreciation of the seriousness of the crime should not be relied upon as a factor to order sentences to be served consecutively," the other two aggravating factors supported consecutive sentences).

### *2.4 – Gorbonosenko waived his argument that the trial court erred by sentencing him based on speculative facts not in evidence.*

Last, Gorbonosenko asserts that in imposing sentence, the trial court relied on speculative facts not in evidence. At trial, the parties disputed whether, prior to the accident, Gorbonosenko had been traveling west on Bootjack Road and failed to stop at the stop sign at the intersection with Highway 20 before getting on to the highway. Counsel for Gorbonosenko argued that Gorbonosenko had been traveling on Highway 20 before the accident and, due to heavy rain, the pavement was wet and slick, which caused him to cross the center line and strike the Kaczmareks. In its sentencing order, the trial court recited the facts of the case, recognizing the dispute as to Gorbonosenko's path of travel, and stated that Gorbonosenko must have taken Bootjack Road and run the stop sign before entering Highway 20 and crashing head on into the Kaczmareks' minivan. Gorbonosenko argues that his path of travel was not an element of the charges or an affirmative defense and the jury did not return a verdict or finding on this fact.

Our review of the sentencing order shows that the trial court clearly set forth what it based Gorbonosenko's sentence on: no mitigating factors and four

aggravating factors, none of which were related to Gorbonosenko's path of travel. Accordingly, there is no indication that the trial court based Gorbonosenko's sentence on what road he drove on. We conclude that any error was harmless.

[34] Based on the foregoing, we affirm Gorbonosenko's convictions and sentence.

[35] Affirmed.

Vaidik, C.J., and Altice, J., concur